**CSD 1001C** [07/01/18]
Name, Address, Telephone No. & I.D. No. 412950-v2

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
   James P. Hill, SBN 90478 / Christopher V. Hawkins, SBN 222961
600 B Street, 17th Floor San Diego, CA 92101
Telephone: (619) 233-4100 / Fax: (619) 231-4372
Attorneys for Debtor and Debtor In Possession,
Vestavia Hills, Ltd., dba Mount Royal Towers

**Order Entered on August 31, 2020 by Clerk U.S. Bankruptcy Court Southern District of California**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re VESTAVIA HILLS, LTD., DBA MOUNT ROYAL TOWERS,

Debtor.

**LODGED**

BANKRUPTCY NO. 20-00018-LA11

Date of Hearing: July 30, 2020
Time of Hearing: 10:00 a.m.
Name of Judge: Hon. Louise DeCarl Adler

# ORDER
### GRANTING DEBTOR'S MOTION FOR ORDER APPROVING:
### (A) SALE OF ASSETS FREE AND CLEAR; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

The court orders as set forth on the continuation pages attached and numbered __2__ through __14__ with exhibits, if any, for a total of __14__ pages. Notice of Lodgment Docket Entry No. __376__.

//
//
//
//
//
//
//

DATED: August 31, 2020

_[signature: Louise DeCarl Adler]_
Judge, United States Bankruptcy Court

| CSD 1001C [07/01/18] | Page **2** of 7 |
|---|---|

ORDER: GRANTING DEBTOR'S MOTION FOR ORDER APPROVING: (A) SALE OF ASSETS FREE AND CLEAR; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

| DEBTOR: VESTAVIA HILLS, LTD., DBA MOUNT ROYAL TOWERS | CASE NO: 20-20018-LA11 |
|---|---|

The hearing on the motion (ECF 121) of Vestavia Hills, Ltd. dba Mount Royal Towers ("Debtor"), the debtor and debtor in possession herein, for approval of the sale of its Mount Royal Towers facility and related business assets ("Assets") to the stalking horse bidder, MED Healthcare Partners, LLC ("MED"), came on regularly for hearing on July 30, 2020 at 10:00 a.m. Appearances at the hearing were as set forth in the record.

This Court had previously issued its order (the "Bid Procedures Order") on March 25, 2020 (ECF 185) (i) approving MED as the "Stalking Horse Bidder" in connection with the proposed sale ("Sale") of substantially all of the Debtor's assets pursuant to the terms of an "Asset Purchase Agreement" dated as of February 6, 2020, which was attached to the Moriarty Declaration which was in turn attached to the Sale Motion at ECF 121-1, Exhibit "C," at pp. 28–101; (ii) authorizing and approving certain proposed procedures, substantially in the form annexed to the Order (ECF #185) as Exhibit "A" ("Bid Procedures") in connection with the proposed Sale, certain proposed assumption and assignment procedures in connection with the Sale, and certain notice procedures, substantially in the form annexed to the Order (ECF 185) as Exhibit "B" ("Sale Notice"); (iii) scheduling a final sale hearing (the "Final Sale Hearing") initially set for May 21, 2020 to consider final approval of the Sale; and (iv) granting related relief. Thereafter, this Court held a hearing on May 21, 2020, on the Debtor's motion to amend overbid procedures and deadlines and to set a new date for final sale hearing (ECF #238). That motion was granted by order entered that same date (ECF 264), thereby setting the Final Sale Hearing on the Sale on July 30, 2020 and amending certain deadlines and dates but not otherwise modifying any sale terms or conditions.

Based upon the foregoing, including all documents filed in support of and in opposition to the Sale Motion, on July 28, 2020 this Court issued its tentative ruling (ECF 363) in which the Court indicated its intention to grant the Sale Motion and to approve the sale to MED. A copy of this tentative ruling is attached hereto as Exhibit "1" and is incorporated by reference as if set forth in full.

At the Final Sale Hearing conducted on July 30, 2020, after hearing arguments of counsel, and considering the entire file and record in this case, the bid of MED was approved as the final and only qualified bid for the Assets. In addition, the Sale Motion (ECF 121) as approved authorized the assumption and assignment of certain executory contracts and unexpired leases (collectively, "Assumed Contracts") as identified below. Also following the Final Sale Hearing, at the request of the Court, on July 31, 2020 the Debtor filed two additional declarations, a Supplemental Declaration of Kevin Moriarty (ECF 364) and a Supplemental Declaration of Ephram Lahasky (ECF 365), which the Court has now also considered. As a result of the foregoing, it appearing to the Court that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other interested parties; notice appearing proper; and good cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

(a) The notice given of the Final Sale Hearing on the Sale Motion was appropriate and complied in all material respects with the requirements of the sale procedures ("Overbid Procedures") approved by order of the Court entered on March 25, 2020 [ECF 185] ("Bid Procedures Order") and of this Court's Order amending certain bid procedures deadlines entered on May 21, 2020 [ECF 264]; complied with the requirements of the Federal Bankruptcy Rules and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of California ("Local Bankruptcy Rules"); such notice was otherwise good and sufficient, and appropriate under the particular circumstances; and no other or further notice of the Sale Motion or the hearing on the Sale Motion is required in order to effectuate the relief granted in this Order. A reasonable opportunity to object to, or be heard with respect to, the Sale Motion and the relief requested therein has been afforded to all interested persons and entities.

| CSD 1001C [07/01/18] | Page **3** of **7** |
|---|---|

ORDER: GRANTING DEBTOR'S MOTION FOR ORDER APPROVING: (A) SALE OF ASSETS FREE AND CLEAR; (B) APPROVING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

| DEBTOR: VESTAVIA HILLS, LTD., DBA MOUNT ROYAL TOWERS | CASE NO: 20-20018-LA11 |
|---|---|

(b) The Debtor and its professionals engaged in fair and reasonable efforts, under the circumstances of this case, to obtain a fair price for the Assets, and the sale process was fair, reasonable, and adequate. The consideration to be paid by MED for the Assets provided for by the Agreement is fair.

(c) The Debtor has complied materially with all Overbid Procedures with respect to the sale of the Assets. The auction of the Assets was fair to all parties-in-interest and complied materially with all Overbid Procedures.

(d) While Commonwealth Assisted Living, LLC, Series E ("Commonwealth") purported to present an overbid by its affiliate, MCAP Birmingham LLC ("MCAP"), that "overbid" was non-conforming and was not a qualifying bid for all the reasons set forth in this Court's tentative ruling (ECF 363), which the Court now adopts as the final ruling on the motion of Commonwealth to deem the bid of MCAP as a qualifying bid.

(e) Moreover, as further set forth in the Court's tentative decision (ECF 363), even if the MCAP bid had been deemed to be qualifying, it was the proper exercise of the Debtor's business judgment for it to reject that bid and to declare the bid of MED as the only qualified and conforming bid for the sale of its Mount Royal Towers Assets. MCAP's bid would have injected confusion and delay into the sales process and changed the "as is, where is" requirement of the Bid Procedures Order (adding additional uncertainty and potential expense and delay), and was, at best, if at all, only marginally economically superior to the MED bid.

(f) The terms and conditions of the Agreement with MED (i) are fair and reasonable; (ii) represent the highest and best offer for the Assets; and (iii) will provide, from a sale of the Assets, a greater recovery for the Debtor's creditors than would be provided by any other alternative for the sale or other disposition of the Assets. The Purchase Price provided by the Agreement constitutes fair consideration for the Assets. The Debtor's entering into and consummating the Agreement is a sound exercise of the Debtor's business judgment. The transaction contemplated by the Agreement is in the best interests of the Debtor's creditors and estate.

(g) Good cause exists to authorize the Debtor to sell the Assets free and clear of all Encumbrances (other than Permitted Encumbrances), Excluded Liabilities and interests of any kind or nature because one or more of the requirements set forth in Section 363(f) of the Bankruptcy Code have been satisfied. As provided in the Sale Motion, and as clarified on the record at the hearing, the lien claim of the senior secured creditor Wells Fargo Bank ("Wells") will transfer and attach from the Assets to the proceeds of sale, and Wells shall be paid the net proceeds of sale from escrow after payment of the costs and expenses of sale, including the sale commission of Blueprint as provided below, and the ordinary course expenses of sale closing, including escrow fees, title fees and related expenses reasonable and necessary to close escrow. The balance of the claim of Wells shall be a general unsecured claim, subject to final allowance pursuant to Bankruptcy Code section 506(a).

(h) The Agreement was negotiated, proposed and entered into by and between the Debtor and MED without collusion, in good faith, and from arm's-length bargaining positions. There has been no fraud or collusion with respect to the auction, or any manipulation with respect to the bidding or sale price with respect to the transaction between the Debtor and MED. Neither the Debtor nor MED has engaged in any conduct that would cause or permit the Agreement, or the transaction contemplated thereby, to be invalidated or avoided under Section 363(n) of the Bankruptcy Code. Accordingly, upon consummation of the transaction contemplated by the Agreement, MED will be a buyer in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code, and, as such, is entitled to the protections afforded by Section 363(m) of the Bankruptcy Code.

(i) MED was the highest and best, and only qualified, bidder for the Assets.

(j) Good cause exists to authorize the Debtor and MED to execute any document, and to take any act, appropriate and necessary to effectuate the Agreement.

(k) In light of the Debtor's need to consummate the sale of the Assets expeditiously in order to preserve and maximize value for the Debtor's estate and its creditors, good cause exists to waive the 14-day stays of orders provided by Rules 6004(h) and 6006(d) of the Federal Bankruptcy Rules.

(l) No party in interest objected to the assumption by MED of any of the agreements contained on the list of Assumed Contract, a copy of which is attached hereto as Exhibit "2" and is incorporated by reference as though set forth in full.

IT IS HEREBY ORDERED that:

1) The Sale Motion is granted. All terms not defined herein shall have the meaning given them in the Sale Motion, or if not defined in the Sale Motion, then in the Agreement.

2) All objections to the Sale Motion are overruled and denied, including, without limitation: (a) the Limited Objections and Reservation of Rights filed by Commonwealth Assisted Living, LLC, Series E (ECF 329) and (b) the Motion of Commonwealth Assisted Living, LLC, Series E for an Order Qualifying MCAP Birmingham, LLC's Overbid in Connection with Auction and Sale of Substantially All of Debtor's Assets (ECF 336).

3) All persons and entities given notice of the Sale Motion who failed to object timely to the relief granted hereby are hereby deemed to consent to the relief granted hereby.

4) All of the terms and conditions of the Agreement are hereby approved, and the Debtor is hereby authorized, pursuant to Sections 105(a), 363(b), (f) and (m), and 365 (a) and (f) of the Bankruptcy Code to sell and to assign to MED the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances), Excluded Liabilities and interests of any nature whatsoever, for a Purchase Price of $12,000,000, pursuant to the terms and conditions of the Agreement.

5) Except as otherwise set forth in the Agreement, the sale to MED of the Assets shall be "AS IS," "WHERE IS," and "WITH ALL FAULTS" without any representations or warranties of any kind whatsoever made by the Debtor with respect to the Assets.

6) Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtor and MED are hereby authorized and empowered to: (i) perform under, consummate, and implement the Agreement; (ii) execute all additional instruments and documents which may be reasonably necessary or desirable to implement the Agreement and the transaction contemplated thereby; (iii) take all further acts as may be necessary or appropriate for the purposes of transferring, granting, or conveying the Assets to MED pursuant to the provisions of the Agreement; (iv) take such other and further acts as are contemplated by the Agreement or reasonably required to fulfill the Debtor's and MED's obligations under the Agreement, all without further order of this Court.

| CSD 1001C [07/01/18] | Page **5** of **7** |
|---|---|

ORDER: GRANTING DEBTOR'S MOTION FOR ORDER APPROVING: (A) SALE OF ASSETS FREE AND CLEAR; (B) APPROVING ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

| DEBTOR: VESTAVIA HILLS, LTD., DBA MOUNT ROYAL TOWERS | CASE NO: 20-20018-LA11 |
|---|---|

7) The transfer and sale of the Assets pursuant to this Order and the Agreement shall vest MED with good title to the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances), Excluded Liabilities and interests of any nature whatsoever, and any and all other rights, claims and interests of any nature whatsoever that may be asserted by any person or entity, including, without limitation, any entity asserting a secured claim against the Assets. Any entity hereafter asserting such an interest against the Assets shall be, and hereby is, forever barred from asserting such interest against the Assets and against MED.

8) Pursuant to Sections 365(a) and (f), at Closing, the Assumed Contracts shown on Exhibit "2" hereto will be assigned to MED, any objections to such assignment–including to cure amounts or adequate assurance of future performance–having been overruled.

9) At Closing, Blueprint shall be paid directly from escrow its commission of one and one-half percent (1.5%) of the Purchase Price.

10) MED is not, as a result of any acts taken by it in connection with the purchase of the Assets, (i) a successor to the Debtor, (ii) a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, or (iii) the alter ego of the Debtor.

11) MED shall have no liability to any creditor or to any other person or entity as a purported successor to the Debtor. The consummation of the transaction provided by the Agreement shall not subject MED to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor or any other person or entity by reason of such transaction, including, without limitation, any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever based on successor or transferee liability.

12) All Persons are hereby enjoined from taking any actions against MED, any Affiliate or assignee of MED, or the Assets to recover any claim that such Person has against Seller relating in any way to the Debtor, the Assets and/or the sale.

13) The Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented by the Debtor, on the one hand, and MED, on the other hand, in a writing signed by such parties, without further order of this Court, provided that any such modification, amendment or supplement does not have a materially adverse effect on the Debtor's estate.

14) The failure to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court, MED, and the Debtor that the Agreement be authorized in its entirety.

15) The Purchaser, as a buyer in good faith, shall be entitled to the protections of Section 363(m) of the Bankruptcy Code if this Order or any authorization contained herein is reversed or modified on appeal. Pursuant to Section 363(m) of the Bankruptcy Code, absent a stay of this Order pending appeal entered prior to the Closing of the transaction contemplated by the Agreement, the reversal or modification on appeal of this Order, or any provision hereof, shall not affect the validity of such transaction if such transaction is closed prior to such stay, reversal or modification on appeal.

16) The validity of the transaction contemplated by the Agreement approved hereby shall not be affected by the appointment of a trustee, the dismissal of the Debtor's case, or the conversion of the Debtor's case to one under Chapter 7 of the Bankruptcy Code.

17) Any conflict between the terms and provisions of this Order and the Agreement shall be resolved in favor of this Order.

18) This Order shall be binding in all respects upon MED, the Debtor, all creditors of the Debtor, including those creditors of the Debtor who purport to hold contingent, unliquidated or disputed claims, all holders of equity interests in the Debtor, all holders of Encumbrances and any trustee that may be appointed in the Debtor's Chapter 11 case or upon any conversion of the Debtor's case to one under Chapter 7 of the Bankruptcy Code. Nothing contained in any Chapter 11 plan confirmed in the Debtor's case, or in any order confirming any such Chapter 11 plan, shall conflict with or derogate from the provisions of this Order and this Order shall control to the extent of any such conflict or derogation.

19) The Debtor, MED, and all creditors, governmental units and other parties-in-interest are bound by, and shall comply with, the provisions of this Order and are hereby directed to take any and all acts appropriate to facilitate the prompt consummation of the transaction approved hereby.

20) This Order is and shall be (i) effective as a determination that, at the Closing and after MED's payment of the Purchase Price in accordance with the terms of the Agreement, any and all Encumbrances existing as to the Assets prior to the Closing Date have been unconditionally released, discharged and terminated as charges against the Assets and/or MED (but not as against the proceeds of the sale of the Assets to which any such interests attach), and (ii) binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

21) Notwithstanding the provisions of Rule 6004(h) or 6006(d) of the Federal Bankruptcy Rules, this Order shall be effective immediately after its entry absent a stay pending appeal of this Order.

22) This Court shall retain exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Agreement, (ii) compel the Debtor or MED to perform its respective obligations under the Agreement, (iii) resolve any disputes, controversies or claims arising out of or relating to the Agreement or the transaction contemplated thereby, and (iv) interpret, implement and enforce the provisions of the Agreement and this Order.

23) The entry of this Order approving the Sale Motion is without prejudice to the rights, claims, causes of action and defenses vis-à-vis the Debtor and its Limited Partners, and each of them, on the one hand, and Commonwealth, on the other hand, arising out of or relating to this Chapter 11 case, or arising out of or relating to any ongoing litigation or extant claims between and among the parties.

IT IS SO ORDERED.

[*APPROVED AS TO FORM SIGNATURES ON PAGE 7 OF THIS ORDER*]

APPROVED AS TO FORM:

POLSINELLI LLP


*/s/ Randye Soref*
Randye Soref
Attorneys for MED Healthcare Partners, LLC



PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP


*/s/ William A. Smelko*
Attorneys for Limited Partners & Post-Petition DIP
Lenders, Judith A. Chance, Karen McElliott, Frank
A. Virgadamo, Connie Virgadamo, B. Renee
Barnard, Charles Barnard and Jack L. Rowe

**EXHIBIT "1"**

TENTATIVE RULING

ISSUED BY JUDGE LOUISE DECARL ADLER

Debtor: VESTAVIA HILLS, LTD.

Number: 20-00018-LA11

Hearing: 10:00 AM  Thursday, July 30, 2020

1) Motion:  MOTION TO AMEND OVERBID PROCEDURES AND FINAL SALE HEARING.

### PROCEDURAL RULING:
The Court GRANTS the Motion of Debtor to strike "supplemental" objections (ECF #342) filed by Commonwealth without leave of Court on 7/21/20, 5 days after the 7/16/20 deadline set by the Court. They are not considered in connection with this or the Commonwealth motion w/r/t MCAP Birmingham as a "qualified overbidder".

### SUBSTANTIVE RULING:
Motion to Sell Free and Clear of Liens **GRANTED**.  For the reasons set forth in tentative ruling w/r/t Commonwealth's motion for a declaration that the MCAP Birmingham bid is a "qualified" bid, the Court finds there is no qualified overbidder. Debtor has provided sufficient evidence that it has satisfied the standards of the business judgment test and the sale is confirmed to "Stalking Horse" bidder on the terms and conditions provided in the Court-approved Asset Purchase Agreement.

2) MOTION OF COMMONWEALTH ASSISTED LIVING, LLC, SERIES E FOR AN ORDER QUALIFYING MCAP BIRMINGHAM, LLC'S OVERBID IN CONNECTION WITH AUCTION AND SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FILED BY JULIAN GURULE ON BEHALF OF COMMONWEALTH ASSISTED LIVING, LLC, SERIES E

Motion of Commonwealth for an Order Qualifying MCAP Birmingham as a Qualified Overbidder or Backup Bidder **DENIED.**

Debtor's has provided substantial evidence of its business judgment in determining Commonwealth/MCAP's bid to be unqualified.

p. 9

Signed by Judge Louise DeCarl Adler August 31, 2020

The court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances. Ordinarily, the position of the trustee or debtor-in-possession is afforded deference, particularly where business judgment is entailed in the analysis. Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's. *In re Lahijani*, 325 B.R. 282, 288–89 (B.A.P. 9th Cir. 2005).

Debtor and Limited Partners are correct, Commonwealth's bid, disguised as MCAP Birmingham's ("MCAP") bid, is not the "highest and best bid" either economically or otherwise. First, Commonwealth seeks to make substantial, material changes to the already Court-approved APA, as detailed in Debtor's Opposition [ECF 362] and Debtor's chart included in its Statement re: Status of Sale Process and Lack of Qualifying Overbids [ECF 332]. Such a demand is utterly contrary to the purpose of court-approved, uniform bidding procedures and forms: To encourage fairness and uniformity in bidding. For this reason alone, Commonwealth's complete overhaul to the APA causes its bid to fail under the Court-approved bidding procedures [ECF 185, 264].

The court-approved overbid procedures require a qualified bid provide evidence of ability to assume Debtor's Medicare and Medicaid contracts and an ability to operate the skilled nursing facility. Commonwealth, and its affiliate MCAP, failed to do so here, and instead merely stated it is "in discussions with several skilled nursing facility operators that expressed interest in managing and operating the [Facility] …." [ECF 336]. In contrast, the stalking horse does in fact own and operate skilled nursing facilities and has established to Debtor's satisfaction its ability to meet requirements to assume Medicare and Medicaid contracts. Therefore, Commonwealth's "bid" is not equal to or better than that of the stalking horse.

Commonwealth added a new condition to closing, namely, requiring that the order entered by the Alabama State Health Officer limiting entry to the Facility to only essential personnel shall have been continuously lifted for 45 consecutive days. In other words, the Coronavirus must be under control in the State of Alabama for 45 consecutive days prior to closing on the sale. Such a condition creates uncertainty in closing, making Commonwealth's "bid" again not equal to or better to that of the stalking horse, but rather, it is far worse.

Next, Commonwealth materially altered the description of assets to be acquired by not committing to assume the resident agreements and instead

p. 10

treating those agreements as executory contracts that could be rejected. As such, the elderly residents of the Facility are not protected under Commonwealth's bid. To the contrary, the stalking horse will assume the resident agreements, as confirmed in a letter dated July 15, 2020 [ECF 330].

Commonwealth altered the process in the APA meant to deal with objectionable title matters by requiring the Court to reject the Telecommunications Easement, or if not, to reduce the purchase price by $100,000. Again, the stalking horse has not objected to the Telecommunications Easement, and therefore, its' bid is superior to Commonwealth's.

Commonwealth seeks to impose multiple post-closing obligations on Debtor, including a new representation and warranty that "any defects in the large extensive outdoor retaining wall . . . have been repaired and the [wall] is structurally sound." [ECF 332, Ex. 1, p. 131] The due diligence period has already passed, and Commonwealth's additional imposition seeks to circumvent that period.

Commonwealth also adds provisions to the overbidder agreement and the APA that require Debtor to agree to remand the pending litigation back to state court in Alabama, and to exclude Commonwealth's acquisition of the assets. Commonwealth attempts to use the acquisition of assets to undermine Debtor's defenses to Commonwealth's claims and influence the outcome of the parties' pending litigation (e.g., as a mitigation argument).

Finally, as correctly observed in the debtor's Limited Partner Opposition (ECF #361), the motion of Commonwealth must be denied for the simple fact that there is no standing for Commonwealth to urge this Court to accept MCAP's alleged overbid.  There is no evidence before the Court that MCAP, a stranger to this case, has any affiliate arrangement with Commonwealth other than MCAP's bald assertion of same (ECF #337, P. 143).  As stated in the Limited Partner Opposition, there is neither disclosure of the composition or membership of MCAP nor evidence of its qualifications to cause this Court to override the debtor's business judgment that MCAP is unqualified to timely complete this transaction. (ECF #361, P. 5-8).

**EXHIBIT "2"**

Signed by Judge Louise DeCarl Adler August 31, 2020

| Name | Cure Amount | Contract Type |
|---|---|---|
| St. Vincent's Health System | 0.00 | Transfer Agreement |
| Brookwood Medical Center | 0.00 | Transfer Agreement |
| BIRMINGHAM WATER WORKS | 0.00 | Water Utility |
| UnitedHealthCare Nursing Home Plan | 0.00 | Medicare Advantage Agreement |
| Center for Medicare/Medicaid Services | 0.00 | Medicare Provider Agreement re Medicare NPI 1033215660 |
| Viva Health | 0.00 | Ancillary Services Agreement |
| Medicare Provider Agreement re Medicare PIN 015455 | 0.00 | Medicare Provider Agreement |
| Yulis Adkins | 0.00 | Resident Agreement |
| Kathy Anglin | 0.00 | Resident Agreement |
| Carol Bartee | 0.00 | Resident Agreement |
| Angela Baynes | 0.00 | Resident Agreement |
| Clarence Bell | 0.00 | Resident Agreement |
| Vernell Bennett | 0.00 | Resident Agreement |
| Myra Bittle | 0.00 | Resident Agreement |
| Darrell Boykins | 0.00 | Resident Agreement |
| Erik Bradford | 0.00 | Resident Agreement |
| Willie Brogden | 0.00 | Resident Agreement |
| Billy Brown | 0.00 | Resident Agreement |
| Vaughnzeal Brown | 0.00 | Resident Agreement |
| Justin Burrow | 0.00 | Resident Agreement |
| Michael Burton | 0.00 | Resident Agreement |
| Michael Cash | 0.00 | Resident Agreement |
| Diane Choyce | 0.00 | Resident Agreement |
| Daniel Cobb | 0.00 | Resident Agreement |
| Dorothy Colburn | 0.00 | Resident Agreement |
| Jimmy Collette | 0.00 | Resident Agreement |
| Larry Combs | 0.00 | Resident Agreement |
| Brian Coopersmith | 0.00 | Resident Agreement |
| Bailey Dann | 0.00 | Resident Agreement |
| Lee Dates | 0.00 | Resident Agreement |
| Danny Davis | 0.00 | Resident Agreement |
| Karen DeLoach | 0.00 | Resident Agreement |
| Leverne Demmings | 0.00 | Resident Agreement |
| Corrine Eyer | 0.00 | Resident Agreement |
| Jeffery Fleeton | 0.00 | Resident Agreement |
| Michael Gable | 0.00 | Resident Agreement |
| Foy Gary | 0.00 | Resident Agreement |
| Leroy Green | 0.00 | Resident Agreement |
| Jean Gregory | 0.00 | Resident Agreement |
| Gertrude Handy | 0.00 | Resident Agreement |
| Donald Harris | 0.00 | Resident Agreement |
| Jeanette Harvey | 0.00 | Resident Agreement |
| Benito Hernandez | 0.00 | Resident Agreement |
| Prince Holmes | 0.00 | Resident Agreement |
| Michael Howard | 0.00 | Resident Agreement |
| Marie Hughes | 0.00 | Resident Agreement |
| Lorraine Hunter | 0.00 | Resident Agreement |
| Adrian Jackson | 0.00 | Resident Agreement |
| Brandon Jeffries | 0.00 | Resident Agreement |
| Darron Johnson | 0.00 | Resident Agreement |
| Joe Jones | 0.00 | Resident Agreement |
| Karen Jones | 0.00 | Resident Agreement |
| Martin Kash | 0.00 | Resident Agreement |
| Stephen Kerr | 0.00 | Resident Agreement |
| Timothy Kirkland | 0.00 | Resident Agreement |
| John Lee | 0.00 | Resident Agreement |
| Peggy Letson | 0.00 | Resident Agreement |
| Gloria Little | 0.00 | Resident Agreement |
| John Luker | 0.00 | Resident Agreement |
| Frances MacDougall | 0.00 | Resident Agreement |
| Malcolm Maherg | 0.00 | Resident Agreement |
| Polly Malone-Six | 0.00 | Resident Agreement |
| Gregory Massey | 0.00 | Resident Agreement |
| Walter Matthews | 0.00 | Resident Agreement |
| Mary McCaa | 0.00 | Resident Agreement |
| Irwin McCay | 0.00 | Resident Agreement |
| John McCray | 0.00 | Resident Agreement |
| Dareyl McElroy | 0.00 | Resident Agreement |
| Kenneth McHenry | 0.00 | Resident Agreement |
| Joseph McMillan | 0.00 | Resident Agreement |
| Jerry Miller | 0.00 | Resident Agreement |
| Dana Mistic | 0.00 | Resident Agreement |
| Margaret Moore | 0.00 | Resident Agreement |

| Name | Cure Amount | Contract Type |
|---|---|---|
| Susan Morse | 0.00 | Resident Agreement |
| Christy Myers | 0.00 | Resident Agreement |
| Karen Otis | 0.00 | Resident Agreement |
| Curtis Owens | 0.00 | Resident Agreement |
| Esther Parnell | 0.00 | Resident Agreement |
| Sara Peacock | 0.00 | Resident Agreement |
| Willie Phillips | 0.00 | Resident Agreement |
| Amelia Putt | 0.00 | Resident Agreement |
| Essie Ragland | 0.00 | Resident Agreement |
| Elsie Ray | 0.00 | Resident Agreement |
| Tracy Riley | 0.00 | Resident Agreement |
| William Robinson | 0.00 | Resident Agreement |
| Douglas Rockett | 0.00 | Resident Agreement |
| Clarence Royster | 0.00 | Resident Agreement |
| Mary Sanders | 0.00 | Resident Agreement |
| Alonzo Scott | 0.00 | Resident Agreement |
| Ned Simmons | 0.00 | Resident Agreement |
| Stephanie Simmons | 0.00 | Resident Agreement |
| Barbara Sisk | 0.00 | Resident Agreement |
| Howard Skipper, Jr. | 0.00 | Resident Agreement |
| Charlie Smith | 0.00 | Resident Agreement |
| Clifford Spencer | 0.00 | Resident Agreement |
| Glenneth Staton | 0.00 | Resident Agreement |
| Ruben Summers | 0.00 | Resident Agreement |
| Raymond Sutter | 0.00 | Resident Agreement |
| Gerald Tait | 0.00 | Resident Agreement |
| Berta Taylor | 0.00 | Resident Agreement |
| Barbara Thacker | 0.00 | Resident Agreement |
| Terry Thornton | 0.00 | Resident Agreement |
| Pauline Turegano | 0.00 | Resident Agreement |
| Betty Vaughan | 0.00 | Resident Agreement |
| Wanda Vaughn | 0.00 | Resident Agreement |
| Virginia Walker | 0.00 | Resident Agreement |
| Darnell Walker-Chatman | 0.00 | Resident Agreement |
| Linda Watts | 0.00 | Resident Agreement |
| Marc White | 0.00 | Resident Agreement |
| Richard Williams | 0.00 | Resident Agreement |
| Sadie WIlliams | 0.00 | Resident Agreement |
| Theresa Williams | 0.00 | Resident Agreement |
| Willie Williams | 0.00 | Resident Agreement |
| Richard Wilson | 0.00 | Resident Agreement |
| Vernon Wilson | 0.00 | Resident Agreement |
| James Witcher | 0.00 | Resident Agreement |
| Donna Wynn | 0.00 | Resident Agreement |
| Susan Yearout | 0.00 | Resident Agreement |
| Sara Zimmerman | 0.00 | Resident Agreement |
| Bill Anderson | 0.00 | Resident Agreement |
| Michelle Andrews | 0.00 | Resident Agreement |
| Jan Coleman | 0.00 | Resident Agreement |
| Barbara Crowley | 0.00 | Resident Agreement |
| Linda Cuddington | 0.00 | Resident Agreement |
| Deloras Custred | 0.00 | Resident Agreement |
| Gladys Deason | 0.00 | Resident Agreement |
| Greg Haas | 0.00 | Resident Agreement |
| Ethel Hoff | 0.00 | Resident Agreement |
| Helen Johnson | 0.00 | Resident Agreement |
| Edith Kirkpatrick | 0.00 | Resident Agreement |
| Nanette Lackey-Griffies | 0.00 | Resident Agreement |
| Jennie Lichter | 0.00 | Resident Agreement |
| Edgar Little | 0.00 | Resident Agreement |
| Rosemary Lucas | 0.00 | Resident Agreement |
| Nathaniel Perkins, Jr. | 0.00 | Resident Agreement |
| Elijah Ray | 0.00 | Resident Agreement |
| Roy Reynolds | 0.00 | Resident Agreement |
| Leonard Rose | 0.00 | Resident Agreement |
| Barbara Smith | 0.00 | Resident Agreement |
| Anna Stanfield | 0.00 | Resident Agreement |
| Robert Travis | 0.00 | Resident Agreement |
| Emma Vaiton | 0.00 | Resident Agreement |
| Elsie Waters | 0.00 | Resident Agreement |
| Clare Williams | 0.00 | Resident Agreement |