SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
  James P. Hill, SBN 90478
  Christopher V. Hawkins, SBN 222961
  Kathleen A. Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Telephone:  (619) 233-4100
Fax:          (619) 231-4372

Counsel for Debtor and Debtor in Possession,
Vestavia Hills, Ltd., dba Mount Royal Towers

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| In re | CASE NO. 20-00018-LA11 |
|---|---|
| VESTAVIA HILLS, Ltd., dba Mount Royal Towers,<br><br>Debtor. | Chapter 11<br><br>**DEBTOR'S EX PARTE APPLICATION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE RE: CONTEMPT OF COURT'S ORDER APPROVING SALE OF ESTATE PROPERTY, HOLDING CERTAIN PARTIES AND THEIR COUNSEL IN CONTEMPT, SANCTIONS, AND OTHER APPROPRIATE RELIEF**<br><br>Date:       None required<br>Time:       None required<br>Ctrm:       2<br>Judge:      Hon. Louise DeCarl Adler<br>United States Bankruptcy Court<br>325 West "F" Street<br>San Diego, CA 92101-6991 |

/ / /

/ / /

/ / /

414740-v3

**EX PARTE APPLICATION**

Vestavia Hills, Ltd., dba Mount Royal Towers ("Debtor"), the debtor and debtor in possession herein, submits this ex parte application ("Application") requesting that this Court issue an order to show cause against Commonwealth Assisted Living, LLC, Series E ("Commonwealth"), MCAP Vestavia, LLC ("MCAP"), and their principals and their attorneys, and each of them, for violating this Court's order (ECF #381) approving the sale of the Debtor's Mount Royal Towers facility and related business assets, and for interfering with the sale parties' efforts to close the sale, and accordingly to show cause why they, and each of them, should not be held in civil contempt for their past and continued acts of interference, and ordered to pay damages to the Debtor by way of an award of attorneys' fees and costs that Commonwealth, MCAP, and their principals and attorneys, and each of them, have caused the Debtor to incur, in an amount subject to proof, and for any and all such other and further relief and sanctions this Court may deem just and proper.

This Application has been made necessary because of the following facts:

As this Court is aware, the sale of the Debtor's Mount Royal Towers facility and related business assets to MED Healthcare ("MED") was ultimately approved at the hearing conducted on July 30, 2020, over the objections of Commonwealth and its unsuccessful attempts to sidetrack the sale by presenting a non-conforming, non-compliant "overbid" by its affiliated entity, MCAP.  Not surprising to the Debtor, given pre-petition litigation that precipitated this Chapter 11 case, and which continued into the early days of this case, the sale process was not without its own issues: on July 16, 2020, Commonwealth Assisted Living LLC, Series EE ("Commonwealth") filed its objections to the proposed sale as well as significant additional pleadings.

Ultimately, this Court overruled those objections, found that the Commonwealth "overbid" by its affiliate, MCAP, did not qualify, and approved the sale to MED Healthcare.  See ECF #381.  See also ECF #399 and supporting

414740-v3

1

documents filed October 30, 2020 (Debtor's Third Motion to Extend Exclusivity), and ECF #401 (Debtor's state report filed November 5, 2020) for further details on these events.

As set forth in those pleadings (ECF #s 399 and 401), once again Commonwealth is interfering with the orderly sale process, and its and MCAP's blocking activities in Alabama relating to issuance of the 113 SCALF Certificate of Need ("CON") beds which ultimately should be awarded and delivered to MED will greatly impact how much time it will take to close the sale of assets to MED. While Commonwealth did not appeal the sale order, it has undertaken other actions to undermine, thwart and delay the sale process–this time, most recently in Alabama. Specifically, the Debtor has encountered opposition from Commonwealth and its affiliate, MCAP, in connection with regulatory agency approvals needed to transfer to MED Healthcare, the CON for the 113 SCALF beds at Mount Royal Towers pending before the State Health Planning and Development Agency of the State of Alabama ("SHPDA"). Commonwealth, through its MCAP affiliate, has filed pleadings and advanced arguments before SHPDA to the effect that MCAP (Commonwealth) *still* has an independent and viable right to purchase Mount Royal Towers and thereby the CON for the 113 SCALF beds. Commonwealth's and MCAP's allegations in this regard are patently false. Those SCALF beds are (i) property of the estate; (ii) part of the bundle of rights that MED is purchasing, and (iii) necessary for MED to obtain the appropriate licensing. See ECF #399 for the discussion regarding the importance of the licensing requirement.

Notwithstanding the rejection of the March 2018 pre-petition purchase agreement between Commonwealth and the Debtor, and the two court orders approving and ordering that rejection, Commonwealth and MCAP have nevertheless continued to pursue their competing application for the same CON for the 113 beds necessary to operate a SCALF in the Mount Royal Towers facility (i) on the ephemeral basis that because it *at one time* had a contract to purchase Mount Royal

Towers; and (ii) on the illusory basis that it might someday still make an offer to buy Mount Royal Towers if MED Healthcare does not close on the sale. On those specious grounds, MCAP (Commonwealth) contends it still has standing to pursue the SCALF CON beds. Hunt Declaration (ECF #399-2), ¶¶ 7, 9, 10.

As set forth in the Supplemental Declaration of David Hunt dated November 10, 2020 (ECF 403) ("Supplemental Hunt Declaration"), on Thursday November 5, 2020, a hearing was held before the administrative law judge on competing motions by Commonwealth/MCAP and by Summit/Vestavia to dismiss each other's CON applications. At the conclusion of the hearing, the administrative law judge took all matters under submission. Supplemental Hunt Declaration, ¶ 5. Thereafter, on Monday November 9, 2020, the administrative law judge issued his decisions sustaining in all respects the arguments of Summit/Vestavia and denying those of Commonwealth/MCAP. Attached to the Supplemental Hunt Declaration as Exhibits "1" and "2" are true copies of the two decisions rendered by the judge in the Alabama proceedings. Exhibit "1" is a true copy of the Order Regarding MCAP's Motion to Dismiss Hearing and Deny Application (Project AL 2020-012). In Exhibit "1" the judge stated that "Intervenor MCAP's motion to Dismiss Hearing and Deny Application . . . is hereby DENIED." Exhibit "2" is a true copy of the Recommended Order for Contested Case Proceeding in case no. AL 2020-011. At page 5 of Exhibit "2," the administrative law judge states that "the application of MCAP Vestavia ALF, LLC, Project No. Al 2020-011, seeking authority to purchase and then operate the 113 SCALF beds formerly operated by Vestavia . . . . is due to be, and is, DENIED."

In reaching that conclusion, the administrative law judge hearing the Vestavia/Summit motion to dismiss the competing Commonwealth/MCAP CON application, and the competing Commonwealth/MCAP motion to dismiss the Vestavia/Summit CON application, relied heavily on this Court's decisions and orders in the Chapter 11 case. See Exhibit "2" to the Supplemental Hunt Declaration: "[t]here is no longer any dispute regarding the enforceability of the Contract–it is not

414740-v3                              3

enforceable. . . .  On March 25, 2020, the bankruptcy court entered an order approving Vestavia's rejection of the Contract . . .  MCAP/Commonwealth did not appeal or contest Vestavia's right to reject the Contract." Exhibit "2," p. 3.  Thereafter, at pages 3 and 4 of Exhibit "2," the administrative law judge acknowledged this Court's granting of the sale motion, its order denying MCAP/Commonwealth's motion to be accepted as a bidder, including as a backup bidder, and concluded that "MCAP can no longer assert any right to purchase from Vestavia the 113 SCALF beds . . . and MCAP is required to facilitate the sale of those beds by Vestavia to MED."  Exhibit "2," p. 4.

        The Debtor has spent a considerable amount of time and effort dealing with the baseless assertions by Commonwealth and MCAP, through their counsel, of an entitlement to a CON for the 113 SCALF beds at Mount Royal Towers.  As Mr. Hunt further states in his Supplemental Declaration, per SHPDA regulations MCAP is permitted to appeal the administrative law judge's order denying its CON application (Exhibit 2) by filing written exceptions to the order with SHPDA within seven days of the entry of the two orders.  MCAP is also permitted to attempt to continue to oppose Summit's CON application.  The administrative law judge has set a scheduling conference for Wednesday, November 18, 2020, on Vestavia/Summit's CON application, and MCAP's counsel has indicated that MCAP and its attorneys still intend to participate in that scheduling conference.  Supplemental Hunt Declaration, ¶ 7.  As a result, it is clear that Commonwealth and MCAP's interference, and that of their principals and attorneys, will continue unless this Court puts an end to that contumacious conduct.  In addition to the substantial expense incurred by the Debtor in fighting Commonwealth's and MCAP's obstructionist tactics in Alabama, these actions have resulted in a stalemate and have delayed process required for the issuance of licenses or the right to acquire licenses for SCALF beds at Mount Royal Towers, which are among the predicate steps to closing the sale to MED.  See ECF 399-2, ¶¶ 15, 17, and 18.  All of this conduct is, in turn, delaying the ability to move forward to close the sale to MED.

Among other things, this Court's sale approval order (ECF #381) provides as follows:

> 6) Pursuant to Sections 363(b) and (f) of the Bankruptcy Code, the Debtor and MED are hereby authorized and empowered to: (i) perform under, consummate, and implement the Agreement; (ii) execute all additional instruments and documents which may be reasonably necessary or desirable to implement the Agreement and the transaction contemplated thereby; (iii) take all further acts as may be necessary or appropriate for the purposes of transferring, granting, or conveying the Assets to MED pursuant to the provisions of the Agreement; (iv) take such other and further acts as are contemplated by the Agreement or reasonably required to fulfill the Debtor's and MED's obligations under the Agreement, all without further order of this Court.
>
> 7) The transfer and sale of the Assets pursuant to this Order and the Agreement shall vest MED with good title to the Assets, free and clear of all Encumbrances (other than Permitted Encumbrances), Excluded Liabilities and interests of any nature whatsoever, and any and all other rights, claims and interests of any nature whatsoever that may be asserted by any person or entity, including, without limitation, any entity asserting a secured claim against the Assets. Any entity hereafter asserting such an interest against the Assets shall be, and hereby is, forever barred from asserting such interest against the Assets and against MED.
>
>      . . . .
>
> 11) MED shall have no liability to any creditor or to any other person or entity as a purported successor to the Debtor. The consummation of the transaction provided by the Agreement shall not subject MED to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor or any other person or entity by reason of such transaction, including, without limitation, any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever based on successor or transferee liability.
>
> 12) All Persons are hereby enjoined from taking any actions against MED, any Affiliate or assignee of MED, or the Assets to recover any claim that such Person has against Seller relating in any way to the Debtor, the Assets and/or the sale.
>
>      . . . .

> 19) The Debtor, MED, and all creditors, governmental units and other parties-in-interest are bound by, and shall comply with, the provisions of this Order and are hereby directed to take any and all acts appropriate to facilitate the prompt consummation of the transaction approved hereby.
>
> . . . .
>
> 22) This Court shall retain exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Agreement, (ii) compel the Debtor or MED to perform its respective obligations under the Agreement, (iii) resolve any disputes, controversies or claims arising out of or relating to the Agreement or the transaction contemplated thereby, and (iv) interpret, implement and enforce the provisions of the Agreement and this Order.

See ECF #381 entered August 31, 2020.

Commonwealth, MCAP, and their principals and their attorneys, have violated several of the above-cited provisions of the sale approval order, and the Debtor strongly believes that such violations are likely to continue. These actions are delaying the sale parties from completing the necessary tasks required to close the approved sale of Mount Royal Towers to MED, and are costing the Debtor, this Chapter 11 estate, MED and the Debtor's limited partners substantial damages. By this Application, the Debtor is requesting that this Court issue an order to show cause why Commonwealth, MCAP, and their principals and their attorneys, and each of them, should not be held in civil contempt for this interference and for their knowing violations of this Court's orders, and to show cause why they should not be held liable for damages payable to the Debtor, including for an award of damages to compensate the Debtor for the substantial attorneys' fees and costs that have been incurred and

/ / /

/ / /

/ / /

/ / /

/ / /

hereafter will be incurred in an amount subject to proof, and for any and all such other and further relief and sanctions this Court may deem just and proper. A proposed order to show cause is attached as Exhibit "A" hereto.

Dated: November 10, 2020

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation

/s/James P. Hill
James P. Hill, Esq.
Sullivan Hill Rez & Engel, APLC
Counsel for Debtor,
Vestavia Hills, Ltd.

414740-v3

7

| Exhibit | Description | Page(s) |
|---|---|---|
| A | Proposed Order | 9–11 |

8

414740-v3

**EXHIBIT "A"**

Exhibit A - Page 9

**CSD 3000A** [07/01/18]

Name, Address, Telephone No. & I.D. No.
SULLIVAN HILL REZ & ENGEL, A Professional Law Corporation
James P. Hill, SBN 90478
Christopher V. Hawkins, SBN 222961
600 B Street, Suite 1700
San Diego, CA  92101   (Phone No. (619) 233-4100)
Attorneys for Debtor and Debtor in Possession,
Vestavia Hills Ltd.,dba Mount Royal Towers

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re
VESTAVIA HILLS, LTD., dba Mount Royal Towers

Debtor.

BANKRUPTCY NO. 20-00018-LA11

Plaintiff(s)

ADVERSARY NO.

v.

Defendant(s)

Date of Hearing:
Time of Hearing:
Name of Judge:   Louise DeCarl Adler

**ORDER**
GRANTING DEBTOR'S EX PARTE APPLICATION FOR ISSUANCE OF AN ORDER
TO SHOW CAUSE RE: CONTEMPT OF COURT'S ORDER

The court orders as set forth on the continuation pages attached and numbered __2__ through __2__ with exhibits, if any, for a total of __2__ pages. Motion/Application Docket Entry No. _____ .

//

//

//

//

DATED: _____

_____
Judge, United States Bankruptcy Court

**CSD 3000A**

Exhibit A - Page 10

Case 20-00018-LT11   Filed 11/10/20   Entered 11/10/20 18:24:47   Doc 405   Pg. 12 of 12

**CSD 3000A** [07/01/18]**(Page 2)**
ORDER GRANTING DEBTOR'S EX PARTE APPLICATION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE RE: CONTEMPT OF COURT'S ORDER
DEBTOR: VESTAVIA HILLS, LTD., dba Mount Royal Towers                CASE NO.: 20-00018-LA11
                                                                     ADV. NO.:

The Court has considered the ex parte application ("Application") (ECF #4__) of Vestavia Hills, Ltd. dba Mount Royal Towers ("Debtor"), the debtor and debtor in possession herein, for issuance of an Order to show cause against Commonwealth Assisted Living, LLC, Series E ("Commonwealth"), MCAP Vestavia, LLC ("MCAP"), and their principals and their attorneys, and each of them, for violating this Court's order (ECF #381) approving the sale of the Debtor's Mount Royal Towers facility and related business assets, and for interfering with the parties' efforts to close the sale, and accordingly to show cause why they, and each of them, should not be held in civil contempt for their past and continued acts of interference, and ordered to pay damages to the Debtor by way of an award of attorneys' fees and costs that Commonwealth, MCAP, and their principals and attorneys, and each of them, have caused the Debtor to incur, in an amount subject to proof, and for any and all such other and further relief and sanctions this Court may deem just and proper.

Upon consideration of the Application and supporting documents, and good cause appearing therefore,

IT IS HEREBY ORDERED that the Application is hereby granted.

IT IS FURTHER ORDERED that a hearing will be held on _____ 2020 at ____ __.m. in Department 2 of this Court for determination whether Commonwealth Assisted Living, LLC, Series E ("Commonwealth"), MCAP Vestavia, LLC ("MCAP"), and their principals and their attorneys, should be held in contempt of Court for violating this Court's order (ECF #381) approving the sale of the Debtor's Mount Royal Towers facility and related business assets, and for interfering with the parties' efforts to close the sale, and accordingly to determine whether they, and each of them, should not be held in civil contempt for their past and continued acts of interference, and ordered to pay damages to the Debtor by way of an award of attorneys' fees and costs that Commonwealth, MCAP, and their principals and attorneys, and each of them, have caused the Debtor to incur, in an amount subject to proof, and for any and all such other and further relief and sanctions this Court may deem just and proper.

IT IS FURTHER ORDERED that the Debtor shall serve this Order on all affected parties in interest by no later than _____ 2020.

IT IS FURTHER ORDERED that any opposition to this order to show cause must be filed and served by no later than _____ 2020.

IT IS FURTHER ORDERED that any reply to any opposition to this order to show cause must be filed and served by no later than _____ 2020.

IT IS SO ORDERED.