AMENDED TENTATIVE RULING
(To correct 2nd motion)

ISSUED BY JUDGE LOUISE DECARL ADLER

Debtor: VESTAVIA HILLS, LTD.
Number: 20-00018-LA11

Hearing: 02:00 PM Thursday, November 18, 2021

Motion: 1) DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT WITH WELLS FARGO BANK, N.A.; FILED BY JAMES P. HILL

Motion to Approve Settlement Agreement with Wells Fargo Bank, N.A. **GRANTED**.

Debtor moves pursuant to Rule 9019 for an order approving the settlement reached between the Debtor and its Limited Partners ("LPs"), and Wells Fargo Bank, N.A. ("Wells Fargo").

FACTUAL SUMMARY:
The settlement fully and finally resolves: (1) Wells Fargo's proof of claim No. 8 filed in this bankruptcy case ("Wells Fargo POC"); (2) ends litigation that started in the Alabama federal court in 2018 (the "Alabama Federal Action"); (3) resolves the pending adversary proceeding in this Court entitled *Vestavia Hills, Ltd., dba Mount Royal Towers v. Wells Fargo Bank, National Association,* Adversary Case No. 20-90083-LA (the "Wells Fargo Adversary"); and (4) Wells Fargo's objections to the LP POC filed in this bankruptcy case (the "Wells Fargo Claim Objections"). The Settlement will help pave the way to confirmation of Debtor's amended plan of reorganization with Wells Fargo's support (the "Amended Plan") that will increase the Debtor's ability to pay all allowed and undisputed unsecured claims in full, and it provides a for the forbearance of any post-judgment collection and/or enforcement action or activity by Wells Fargo on its judgment against the LPs pursuant to the Forbearance Agreement which is part of the settlement. [See Moriarty Decl., Ex. A]

The settlement provides that:

a. The amount due to Wells Fargo under the Judgment is $15,898,953.51 as of October 16, 2021 (the "Judgment Amount").

b. The Debtor will continue to make monthly payments to Wells Fargo of $65,000 through the closing of the Sale as defined below.

c. The LPs will continue to make monthly payments to Wells Fargo of $15,000 through the closing of the Sale.

d. Wells Fargo will be paid all net proceeds from the closing of the Sale directly from escrow, leaving (i) a deficiency balance amount owed by the LPs/Judgment Debtors on the Judgment Amount, and (ii) an undersecured deficiency claim amount owed by the Debtor in the Bankruptcy (collectively, the "Deficiency Balance Amount").

e. After closing of the Sale, the Deficiency Balance Amount owed on the Judgment will be satisfied through payments to be made to Wells Fargo by the LPs/Judgment Debtors, with each payment to be applied first to Judgment interest calculated at 0.22% per annum.

f. The LPs/Judgment Debtors shall pay Wells Fargo $3,000,000 on or before the earlier of: (a) the 45th day following the close of escrow of the Sale, or (b) December 1, 2021.

g. The LPs/Judgment Debtors shall make payments of $666,667 to Wells Fargo on March 15, 2022 and June 15, 2022, with each payment to be applied first to Judgment interest calculated at 0.22% per annum.

h. Any remaining Deficiency Balance Amount then owed on the Judgment will be paid to Wells Fargo Bank by the LPs/Judgment Debtors on or before September 15, 2022, with this final payment to be applied first to Judgment interest calculated at 0.22% per annum.

i. As consideration for the above payments and continued quarterly submission to Wells Fargo of certain financial information from the LPs/Judgment Debtors, Wells Fargo shall forbear from seeking collection on the Judgment of any type against the LPs/Judgment Debtors or against any of their assets, properties or accounts.

j. **_The Deficiency Balance Amount of Wells Fargo's undersecured claim in the Bankruptcy will be impaired and deemed satisfied by the Debtor paying Wells Fargo: (i) the net proceeds of the Sale from escrow at closing to fully satisfy Wells Fargo's secured claim; (ii) the previously agreed and Bankruptcy Court ordered monthly adequate protection payments of $65,000 per month through the date of the Sale closing; and (iii) the net proceeds of any litigation recovery received by the Debtor, if any, from any litigation prosecuted by the Debtor._**

k. Wells Fargo shall withdraw, with prejudice, the Wells Fargo Claim Objections (ECF #s 321, 322, 323, 324, and 325) to the unsecured claims of the LPs/Judgment Debtors in the Bankruptcy.

l. The Debtor will file this Motion seeking approval of the Settlement, which is not effective until approved by the Bankruptcy Court.

m. Wells Fargo shall file a Notice of Full Satisfaction of Judgment and shall request the dismissal, with prejudice, of the Alabama Federal Action within ten (10) business days of the receipt of full payment of the Judgment Amount as provided above.

*LEGAL ANALYSIS*:   The court has the authority to approve a proposed settlement pursuant to Bankruptcy Rule 9019. Compromises are usually approved if they are entered through the exercise of a trustee's business judgment. While the bankruptcy court should not rubber-stamp the trustee's decision, it should avoid second guessing the trustee in the exercise of his or her business judgment. *In re Steele*, 444 B.R. 520, 523 (Bankr. E.D. Pa. 2010). The court should approve a proposed settlement when it finds the settlement is fair, reasonable and equitable and within the sound business judgment of the trustee, evaluating the following factors: (1) The probability of success in the litigation; (2) the difficulties, if any, of collection; (3) the complexity of the litigation, expense, inconvenience and delay necessarily attending to it; and (4) the best interests of creditors and deference to their reasonable views. *In re A&C Properties, Inc.*, 784 F.2d 1377, 1381 (9th Cir. 1986).

The factors apply here as follows:

(1) **Probability of Success in Litigation:** Wells Fargo has already obtained the Judgment against the LPs/Judgment Debtors. While it does not have a judgment against the Debtor, this Court would need to conduct a hearing after the Sale closes to determine the amount of Wells Fargo's remaining (albeit unsecured) claim would be against the Bankruptcy estate. The outcome of any litigation between the Debtor and Wells Fargo on this point is uncertain and would likely result in additional administrative costs being incurred in the Bankruptcy. The Settlement allows for a method of fixing the amount of the Wells Fargo POC and for moving forward to pay the claim as well as satisfying the agreed Deficiency Balance Amount as expeditiously as possible both outside of the Bankruptcy directly by the LPs, and through an amended Bankruptcy plan that the Debtor is prepared to propose (the "Amended Plan"). The Settlement also avoids the cost, delay, and risk involved in litigating any and all claims and defenses.

(2) **Difficulties, if any, of Collection:**   This factor is not an issue.

(3) **Complexity/Expense/Inconvenience/Delay of Litigation:** Any litigation on the amount of the Wells Fargo POC would be complicated as it could involve expert testimony as to the industry standard for reasonable fees, interest, attorneys' fees and other related issues. These issues would likely result in costly litigation which could further delay the administration of the Bankruptcy estate, including confirmation of the Amended Plan, as well as exceed any potential benefits that could be obtained from the Settlement. The Settlement resolves the Wells Fargo POC without the expense and uncertainty of litigation.

(4) **Best Interests of Creditors/Deference to their Reasonable Views:** The Settlement is in the best interest of the Debtor, its creditors, and its estate in that it: (i) fully and finally resolves the Wells Fargo POC as the only secured claim against the Bankruptcy estate, (ii) provides for a mechanism for payment of the Deficiency Balance Amount as the unsecured component of the Wells Fargo POC, and (iii) should

result in the Debtor's ability to propose a confirmable Amended Plan that increases the ability of the Debtor to pay all other allowed and undisputed unsecured claims of creditors in full. [*See* ¶¶ 30–34 of the Moriarty Declaration]

*BUSINESS JUDGMENT*: There is a legitimate business justification for the compromise. The court does not have to be convinced that the settlement is the best possible outcome -- only that the settlement falls within a reasonable range of the litigation possibilities. *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. Del. 2004). The current settlement falls well within the range of reasonableness litigation results.

Rule 9019 empowers the court to approve the compromise of a dispute. The court should approve the compromise if it determines that it is fair, reasonable and equitable. *In re A&C Properties, Inc.*, 784 F.2d 1377, 1381 (9th Cir. 1986). [See discussion of factors above]   A court should not substitute its own judgment for that of the debtor in possession or trustee. The trustee's judgment should be granted deference provided that the trustee can demonstrate that there is a legitimate business justification for the compromise, and that the proposed compromise falls within a "range of reasonableness." *In re Moorhead Corp.*, 208 B.R. 87, 89 (1st Cir. 1997).

Here, the Debtor has set forth what this multi-party settlement accomplishes and why, in its business judgment, the settlement is fair and equitable and in the best interest of the estate. The Court finds that this discussion supports approval of this settlement; and as this is a case with an active creditor body and no opposition has been filed, it gives deference to this fact and the motion to approve the settlement is granted.

As this motion was unopposed, this hearing is vacated and movant authorized to submit forthwith an order granting the motion in accordance with this tentative ruling. Appearances on this matter are excused.

2) DEBTOR'S MOTION TO TERMINATE THE APPOINTMENT OF THE PATIENT CARE OMBUDSMAN DUE TO THE CLOSING OF THE SALE TO MED HEALTHCARE PARTNERS, LLC.

Motion to terminate appointment of Patient Care Ombudsman **GRANTED**.   Unopposed.

The Debtor moves pursuant to FRBP 2007.2 for an order terminating the appointment of Virginia Moore-Bell as the patient care ombudsman due to the closing of the sale of Med Healthcare Partners ("MRT") on 10/19/2021.   Rule 2007.2 permits the Court to terminate the appointment of a patient care ombudsman on a notice motion where the appointment is not necessary to protect patients.   Here, Ms. Moore-Bell has performed exceptionally and at minimal cost; however, her services are no longer necessary because the Debtor no longer has any patients due to the closing of the sale of MRT and transfer of its business operations to the new Buyer.

As this motion is unopposed, the Court vacates this hearing and directs counsel for movant to submit an order forthwith granting the requested relief in accordance with this tentative ruling.   Appearances on this matter are excused.

Additionally, the Court wishes to recognized and thank the ombudsman Ms. Virginia Moore-Bell for her excellent service to the debtor's facility during this extraordinary time of pandemic and the infamous "sink hole" that cut off the facility from all but the most intrepid employees and caregivers.


3) CHAPTER 11 PETITION 1) SETTING STATUS CONFERENCE; 2) SETTING COMPLIANCE DEADLINES; AND 3) SETTING SANCTIONS, IF APPROPRIATE, INCLUDING DISMISSAL, CONVERSION OR APPOINTMENT OF A CHAPTER 11 TRUSTEE OR EXAMINER BECAUSE OF NONCOMPLIANCE WITH ABOVE-REFERENCE REQUIREMENTS (fr 8/26/21)

**MATTER CONTINUED TO JAN. 20, 2022 at 2:00 p.m.**     Court has considered debtor's most recent status report and agrees that given the state of this case and the need to file a new plan and disclosure statement reflecting the many changed conditions in the debtor's case (closure of the sale to MRT; pendency of mediation in the 9th Cir. on the SBA dispute; recent approval of debtor's compromise with Wells Fargo Bank; remand of litigation with Commonwealth to Alabama), a lengthy continuance is appropriate and necessary.   Court requests debtor to file status report one week prior to continued hearing date.

Appearances excused at today's hearing.

Case 20-00018-LA11    Filed 11/12/21    Entered 11/12/21 16:58:02    Doc 636    Pg. 6 of 6