1 | JULIAN I. GURULE (SBN: 252160)
    jgurule@buchalter.com
2 | ANTHONY J. NAPOLITANO (SBN: 227691)
    anapolitano@buchalter.com
3 | BUCHALTER, a Professional Corporation
  | 1000 Wilshire Boulevard, Suite 1500
4 | Los Angeles, CA 90017-1730
  | Telephone: (213) 891-0700
5 | Facsimile: (213) 896-0400

6 | RICHARD J. BROCKMAN (admitted *pro hac vice*)
  | BRENT D. HITSON (admitted *pro hac vice*)
7 | MARC P. SOLOMON (admitted *pro hac vice*)
  | BURR & FORMAN LLP
8 | 420 North 20th Street, Suite 3400
  | Birmingham, AL 35203
9 | Telephone: (205) 251-3000
  | Facsimile: (205) 458-5100

*Attorneys for Commonwealth Assisted Living, LLC, Series E*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| In re | |
|---|---|
| | Case No. 20-00018-LA11 |
| VESTAVIA HILLS, LTD., d/b/a MOUNT ROYAL TOWERS, | Chapter 11 |
| Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE** |
| | [Motion, Request for Judicial Notice and Declaration of Anthony Napolitano concurrently filed] |
| | **Hearing:**<br>Date: May 12, 2022<br>Time: 2:00 p.m.<br>Place: United States Bankruptcy Court<br>Courtroom 2, Room 118<br>325 West F Street<br>San Diego, California 92101<br>Judge: Louise De Carl Adler |

BN 69394013v7

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 3

III. LEGAL ARGUMENT ......................................................................................................... 6

    A. The Court Should Dismiss the Chapter 11 Case Because Multiple Grounds for Cause Exist Under Section 1112(b)(1). .................................................................. 6

IV. CONCLUSION .................................................................................................................. 10

BN 69394013v7     i

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Diwan, L.L.C. v. Maha-Vishnu (In re Diwan, L.L.C.)*,
   848 F.3d 1147 (8th Cir. 2017) ................................................................................................ 6

*Loop Corp. v. United States Trustee*,
   379 F. 3d 511 (8th Cir. 2004) .................................................................................................. 7

*In re Jayo*,
   2006 Bankr. LEXIS 1996, at *20 (Bankr. D. Idaho July 28, 2006) ......................................... 6

*In re RainTree Healthcare of Forsyth LLC*,
   2018 Bankr. LEXIS 334 (Bankr. M.D.N.C. Feb. 7, 2018) ...................................................... 8

*Sullivan v. Harnisch (In re Sullivan)*,
   522 B.R. 604, 612 (9th Cir. B.A.P. 2014) ............................................................................. 10

*Synovus Bank v. Brooks (In re Brooks)*,
   488 B.R. 483 (Bankr. N.D. Ga. 2013) ................................................................................ 8, 9

**Federal Statutes**

11 U.S.C. § 1112(b)(4)(A) .......................................................................................................... 6, 8, 9

11 U.S.C. § 1112(b)(4)(J) ............................................................................................................. 7, 9

28 U.S.C. § 1452 ........................................................................................................................ 1, 3, 9

Bankruptcy Code § 1112(b) ............................................................................................................ 2

Bankruptcy Code § 1112(b)(1) ........................................................................................................ 6

Bankruptcy Code § 1112(b)(4) .................................................................................................... 6, 8

Bankruptcy Code § 1121(d)(2) ........................................................................................................ 2

**Rules**

Federal Rule of Bankruptcy Procedure 9027(d) ........................................................................ 1, 9

**Other Authorities**

7 COLLIER ON BANKRUPTCY ¶ 1112.01[2] ............................................................................. 6, 7, 8

BN 69394013v7            ii

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Commonwealth Assisted Living, LLC ("Commonwealth") respectfully submits this *Memorandum of Points and Authorities* in support of its concurrently filed *Motion to Dismiss Chapter 11 Case* (the "Motion") in the bankruptcy case of the above-captioned debtor and debtor-in-possession (the "Debtor").

## I. INTRODUCTION

The Court should dismiss this chapter 11 case (the "Case"). The Court has already found that the Debtor filed bankruptcy—*over two years ago*—as part of an improper forum-shopping effort by the Debtor and its non-debtor limited partners (the "Limited Partners") to avoid state court determination of their litigation with Commonwealth. *See Order on Motion to Remand the Adversary Proceeding in Whole or in Part Under 11 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027(d)* (the "Remand Order"), Exhibit 1 p. 13 ("The Court finds that the Defendants have engaged in forum shopping, both before and after this bankruptcy case was filed. The Court's factual findings show that the Debtor timed its bankruptcy filing to stay litigation of the Alabama State Court Action against *all* Defendants…") (emphasis in original). On October 12, 2021, the Court remanded Commonwealth's litigation against the Debtor and the Limited Partners to the Alabama state court and granted relief from the automatic stay to permit such litigation to proceed to trial. *See*, *e.g.*, Remand Order p. 2.

The Case now languishes in bankruptcy, with no prospect for rehabilitation (or a confirmable plan of liquidation), while substantial administrative claims against the estate continue to mount. No stakeholder benefits from the Debtor remaining in bankruptcy—aside from the non-debtor Limited Partners, who appear willing to continue to burden the estate with administrative DIP loan obligations to pay professional fees. According to the Debtor's latest Monthly Operating Report, the Debtor has already *paid* over $2.7 million in professional fees in this Case and *accrued* over $3.1 million. *See* Monthly Operating Report pp. 3, 20 [Docket No. 712]. *See* Request for Judicial Notice concurrently filed ("RJN"), Exh. 15.

Indeed, this Case is administratively insolvent by any measure, with insufficient cash—and no ability to generate revenue—to meet its post-petition obligations (be they the professional fees

or the DIP loan advances incurred by the Debtor to pay professional fees). *See*, *e.g.*, RJN Exh. 15, at p. 2 (showing *negative* cash receipts for February 2022 and only $7,040 in accounts receivable). It is time for this Case to end.

The Debtor has no legitimate reason to remain in bankruptcy. The Debtor closed the sale of substantially all of its assets to MED Healthcare over five months ago, and has done nothing since that time to materially advance the progress of this Case. *See Notice of Sale Closing and Notice Vacating Reserved Hearing Dates.* [Bk Docket No. 623]. *See* RJN, Exh. 13. The Debtor no longer has any operations, employees, vendors, residents or patients. *See id*. ("All of the Debtor's resident care agreements for its senior care and other assisted living and independent living residents were assigned to MED pursuant to the Sale Order, and MED has now taken over responsibility for performance of all such agreements.").

The Debtor does not have any proposed plan on file—and the Court has already refused to approve the Debtor's first plan because, *inter alia*, it impermissibly sought to release the non-debtor Limited Partners from liability to Commonwealth. *See* Amended Tentative Ruling [Docket No. 578] ("The discharge of the debt owed to Commonwealth is on the EDOP, and the plan pays Commonwealth's allowed claim <u>over 60 months</u> during which it is enjoined from collecting a judgment against the LPs in the Alabama action (if it obtains one) – except through the plan . . . Therefore, the plan violates § 524(e) as to Commonwealth."). *See* RJN, Exh. 11. The Debtor's Court-ordered plan exclusivity period long-since expired. *See Order on Debtor's Fourth Motion to Extend Exclusivity Periods* [Docket No. 453] (extending plan filing exclusivity to and including July 3, 2021). *See* RJN, Exh. 6. The Debtor is well past the 18-month and 20-month maximum exclusivity periods for filing and soliciting a plan, respectively, set forth in Bankruptcy Code section 1121(d)(2).

Accordingly, because the Debtor continues to incur administrative expenses that it has no ability to pay and has no prospect for rehabilitation, the Court should dismiss this Case pursuant to section 1112(b) of the Bankruptcy Code.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**

## II. STATEMENT OF FACTS

On January 3, 2020, the Debtor filed its chapter 11 petition in this Court staying the state court action—designated as *Commonwealth Assisted Living, LLC v. Vestavia Hills Ltd.*, Case No. CV-2018-00390 (Ala. Cir. Court) (the "State Court Action") assigned to the Circuit Court of Jefferson County, Alabama—as to the Debtor. Declaration of Anthony J. Napolitano concurrently filed (the "Napolitano Decl."), ¶ 4. On January 13, 2020, the Debtor removed the State Court Action under 28 U.S.C. § 1452 to the United States District Court, Northern District of Alabama. *Id.* at ¶ 5.

On January 14, 2020, the Debtor filed a motion to transfer the venue of the removed State Court Action to this Court. *Id.* at ¶ 6. In the removed State Court Action, Commonwealth filed its motion for remand (the "Remand Motion") on January 29, 2020 and its opposition to the Debtor's motion to transfer venue on February 13, 2020. *Id.* The United States Bankruptcy Court, Northern District of Alabama, transferred venue of the removed State Court Action to this Court, but did not decide the Debtor's motion to remand. *Id.* at ¶ 7. The removed State Court Action was docketed in this Court on April 8, 2020 as *Commonwealth Assisted Living, LLC, Series E v. Vestavia Hills, Ltd., et al.*, Adv. Proc. No. 20-90060-LA (Bankr. S.D. Cal.). *Id.*

On January 24, 2020, Commonwealth filed its motion for relief from the automatic stay to allow Commonwealth to proceed with its claims against the Debtor in the State Court Action (the "Stay Relief Motion"). *Id.* at ¶ 8.

On February 13, 2020, the Debtor filed its *Motion for Order: (1)(A) Approving Stalking Horse Agreement; (B) Approving Overbid Procedures; (C) Approving Retention of Broker; (D) Approving Rejection of Commonwealth Agreement; (E) Scheduling Final Sale Hearing; and (2)(A) Approving Sale of Assets Free and Clear; (B) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Bk. Docket No. 121] (the "Sale Motion") seeking to sell substantially all of its assets consisting of the Facility to Med Healthcare Partners, LLC ("Med Healthcare") as the stalking horse bidder. *Id.* at ¶ 9. The Court approved the Debtor's sale procedures on March 25, 2020. *Id.* at ¶ 10. Thereafter, the Debtor filed and served its *Notice of Sale of Assets, Bidding Procedures, Assumptions and Assignment of Contracts, and*

*Sale Hearing* providing (1) notice of the auction process for the sale of Mount Royal Towers and (2) the May 21, 2020 hearing on the Sale Motion to approve such sale. *Id.*

On May 13, 2020, the Court entered its *Order on Debtor's Motion to Extend Exclusivity Periods* [Docket No. 251], which extended the Debtor's exclusivity deadlines for plan filing and solicitation to August 3, 2020 and September 29, 2020, respectively. See Request for Judicial Notice concurrently filed ("RJN"), Exh. No. 2. On May 21, 2020, at the Debtor's request, this Court entered its *Order Granting Debtor's Motion to Amend Overbid Procedures and Deadlines and to Set New Date for Final Sale Hearing*, which continued the sale hearing to July 30, 2020. Napolitano Decl., ¶ 11.

On July 22, 2020, the Court entered its *Order on Debtor's Second Motion to Extend Exclusivity Periods* [Docket No. 351], which extended the Debtor's exclusivity deadlines for plan filing and solicitation to November 2, 2020 and December 28, 2020, respectively. *See* RJN, Exh. 3.

The Court approved the sale to MED Healthcare at the July 30, 2020 hearing. Napolitano Decl., ¶ 12. The sale was projected to close shortly thereafter.[1] *Id*. Yet, on January 18, 2021, the Debtor stated in its *Fourth Motion to Extend Exclusivity Periods* that the major milestone in the case—the closing of the already-approved sale of the Debtor's operating business—is within sight . . . ." *Id*. Six more months later and the sale of Mount Royal Towers to MED Healthcare had not yet occurred. *Id*.

On December 11, 2020, the Court entered its *Order on Debtor's Third Motion to Extend Exclusivity Period* [Docket No. 428], which extended the Debtor's exclusivity deadlines for plan filing and solicitation to February 5, 2021 and March 26, 2021, respectively. *See* RJN, Exh. 5. On January 29, 2021, the Court entered its *Order on Debtor's Fourth Motion to Extend Exclusivity Periods* [Docket No. 453] (the "Fourth Exclusivity Order"), which extended the Debtor's exclusivity deadlines for plan filing and solicitation to July 3, 2021 and September 3, 2021, respectively. *See* RJN, Exh. 6.

On July 2, 2021, the Debtor filed its *Proposed Disclosure Statement Describing the Debtor's Chapter 11 Plan of Reorganization dated July 2, 2021*, stating that "[t]he sale is expected

---

[1] *See, e.g.*, RJN, Exh. 4 at p. 9, ln. 21 (*Debtor's Third Chapter 11 Status Report* [Docket No. 401]).

to close by, on or before September 30, 2021" over 14 months after the initial sale hearing. Napolitano Decl., ¶ 13. On July 3, 2021, the Debtor's exclusive plan filing period expired pursuant to the Fourth Exclusivity Order.

On July 30, 2021, Commonwealth filed *Commonwealth Assisted Living, LLC, Series E's Objection to Debtor's Proposed Disclosure Statement Describing the Debtor's Chapter 11 Plan of Reorganization Dated July 2, 2021* [Docket No. 532]. *See* RJN, Exh. 7. On August 6, 2021, the Debtor filed first amended versions of its plan (the "First Amended Plan") [Docket No. 548] and associated disclosure statement [Docket No. 549]. *See* RJN, Exh. 9.

On August 25, 2021, the Court entered its amended tentative ruling (the "Amended Tentative Ruling") [Docket No. 578], denying approval of the Debtor's disclosure statement and finding that "the debtor has proposed a plan that is facially <u>unconfirmable</u>." *See* RJN, Exh. 11 at 1 (emphasis in original). On August 26, 2021, the Court entered its Minute Order [Docket No. 580] continuing the hearing on the Debtor's disclosure statement and providing "for an amended plan & disclosure statement to be filed by 9/27/21 . . . ." *See* RJN, Exh. 17. On September 3, 2021, the Debtor's exclusive plan solicitation period expired pursuant to the Fourth Exclusivity Order.

The hearing on Commonwealth's Remand Motion and Stay Relief Motion occurred on September 21, 2021 with the Court granting both motions. Napolitano Decl., ¶ 14. On October 12, 2021, this Court entered its *Order on Motion to Remand the Adversary Proceeding* remanding the State Court Action in its entirety to the Alabama State Court. *Id.* at ¶ 15. That same day, the Court also entered its *Order on Commonwealth's Motion for Relief from the Automatic Stay* (the "Stay Relief Order"), which terminated the automatic stay "to permit Commonwealth to proceed against the Debtor and its estate to entry of a final judgment (including any appeals) in accordance with applicable non-bankruptcy law" in the remanded State Court Action. *Id.* at ¶ 16.

On October 20, 2021, the Debtor filed its *Notice of Sale Closing and Notice Vacating Reserved Hearing Dates* (the "Notice of Closing"), stating that the sale of the Facility to MED Healthcare had closed on October 19, 2021. Napolitano Decl., ¶ 17. On February 23, 2022, the Debtor filed its Monthly Operating Report for the January 2022 monthly period (the "January 2022 MOR") [Docket No. 707]. *See* RJN, Exh. 14. On March 25, 2022, the Debtor filed its Monthly

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**

Operating Report for the February 2022 monthly period (the "February 2022 MOR") [Docket No. 712]. *See* RJN, Exh. 15.

### III. LEGAL ARGUMENT

#### A. The Court Should Dismiss the Chapter 11 Case Because Multiple Grounds for Cause Exist Under Section 1112(b)(1).

Bankruptcy Code section 1112(b)(1) provides, in relevant part, that:

> Except as provided in paragraph (2)…on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

*See* 11 U.S.C. § 1112(b)(1). Where "cause" exists for dismissal or conversion, section 1112(b)(1) requires that the bankruptcy court grant the relief. *See*, *e.g.*, 7 COLLIER ON BANKRUPTCY ¶ 1112.01[2] (Matthew Bender 16th ed. 2022) (hereinafter "Collier") ("If cause is demonstrated under the current statute, the court must grant relief, unless it is found that the exception in section 1112(b)(2) applies."). Bankruptcy Code section 1112(b)(4) sets forth a non-exhaustive list of factors that constitute "cause" for purposes of section 1112(b)(1). *In re Jayo*, 2006 Bankr. LEXIS 1996, at *20 (Bankr. D. Idaho July 28, 2006) (examples of "cause" are not limiting "or, in other words, are nonexclusive").

Section 1112(b)(4)(A) provides that cause exists if (1) there is a "substantial or continuing loss to or diminution of the estate" and (2) there is an "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A); *see e.g.*, *Diwan, L.L.C. v. Maha-Vishnu (In re Diwan, L.L.C.)*, 848 F.3d 1147, 1150 (8th Cir. 2017) (affirming dismissal under section 1112(b)(4)(A) where chapter 11 case was pending for three years and cash flow issues made plan feasibility doubtful). With respect to the first element, "[i]n the case of a non-operating debtor, continued accrual of administrative expenses without corresponding income may constitute substantial or continuing loss as contemplated by section 1112(b)(4)(A)." COLLIER ¶ 1112.04[6][a][i] (16th ed. 2022).

With respect to the second element of the test, *Collier* observes that:

> Significantly, the second part of the test under section 1112(b)(4)(A) requires a reasonable likelihood of "rehabilitation," not "reorganization." Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

*Id*. ¶ 1112.04[6][a][ii] (16th ed. 2022).

In *Loop Corp. v. United States Trustee*, 379 F. 3d 511 (8th Cir. 2004), the Eighth Circuit Court of Appeals affirmed the bankruptcy court's dismissal of a liquidating debtor's case, where the debtor ceased operations and therefore generated no revenue, while continuing to accrue administrative expenses with no reasonable likelihood of rehabilitation. The *Loop Corp.* court reasoned that:

> In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1)…Likewise, the bankruptcy court did not err in concluding that a liquidating debtor who had no intention of restoring its business had no reasonable likelihood of rehabilitation. Courts have consistently understood "rehabilitation" to refer to the debtor's ability to restore the viability of its business.

*Id*. at 516 (internal citations omitted).

In addition, section 1112(b)(4)(J) provides that cause exists where the debtor fails to "confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). "The filing of a plan of reorganization is 'central' to successful Chapter 11 Cases, for a plan is the framework for the debtor's reorganization and successful exit from bankruptcy, and as such, a debtor cannot wallow in Chapter 11 indefinitely. Thus, many courts have interpreted this provision, as it pertains to customary Chapter 11 cases, as requiring a plan within a reasonable

period of time." *Synovus Bank v. Brooks (In re Brooks)*, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) (internal citations and quotation marks omitted).

"The court also has discretion in determining what additional circumstances not enumerated in section 1112(b)(4) constitute cause. Among the unenumerated bases for cause is a debtor's bad faith." COLLIER ¶ 1112.01[2] (16th ed. 2022). "In addition to [the bankruptcy court's] discretion, a single 'cause' is sufficient to warrant a chapter 11 dismissal for cause." *In re RainTree Healthcare of Forsyth LLC*, 2018 Bankr. LEXIS 334, at *20 (Bankr. M.D.N.C. Feb. 7, 2018) (dismissing chapter 11 case of purported CON holder where, *inter alia*, debtor had no income and no prospects of rehabilitation).

Here, multiple bases for dismissal exist. With respect to the first example of cause listed in section 1112(b)(4)(A), the Debtor's own monthly operating reports demonstrate that the estate is suffering substantial and continuing losses. *See*, *e.g.*, February 2022 MOR, p. 2. For example, because the Debtor no longer has any business or means to generate revenue, the February 2022 MOR shows *only $588* in gross income for all of February 2022. During the same period, the February 2022 MOR shows $49,723 in professional fees and expenses paid. Since the Debtor closed its sale, the pattern has been the same—with minimal income and substantial and continuing incurrence of administrative expenses. *See*, *e.g.*, January 2022 MOR (showing negative $1,821 in gross income against $243,740 in professional fees and expenses paid). With no prospect of generating income, by remaining in bankruptcy, the Debtor only continues to saddle this estate with substantial administrative expenses—either in the form of professional fees or DIP loan advances to pay professional fees. Regardless, this is precisely the type of substantial and continuing losses (and diminution of estate assets) that require dismissal.

With respect to the second example of cause listed in section 1112(b)(4)(A), there is plainly no prospect of a successful rehabilitation of the Debtor's business. The Debtor itself admits that it is not seeking to reorganize or rehabilitate its business in any manner now that the sale to MED Healthcare has closed. *See*, *e.g.*, *Debtor's Proposed First Amended Disclosure Statement Describing the Debtor's [Proposed] First Amended Chapter 11 Plan of Reorganization Dated August 6, 2021* ("The Plan, at its core, is a liquidating plan…"). Indeed, the Court has even found

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**

as much in connection with denying approval of the Debtor's disclosure statement. *See, e.g.*, Amended Tentative Ruling p. 3 ("The Limited Partners argue that Debtor's post-confirmation business will be litigation and payment of claims. The argument is nonsense. A case that solely liquidates litigation claims and pays creditors is a liquidations case, not a reorganization case."). Needless to say, a debtor with no operating assets, no business, no employees, that has already filed one (failed) plan of liquidation, cannot show that it has any prospect of rehabilitation. Accordingly, the Court should dismiss the Case under section 1112(b)(4)(A).

Likewise, the Court should dismiss the Case pursuant to section 1112(b)(4)(J) because the Debtor has failed to confirm a plan within a reasonable period of time. *See Brooks*, 488 B.R. at 490. The Case has been pending for over two years, and the Debtor has failed to file a confirmable plan during that time. The Debtor filed its first plan of liquidation on July 2, 2021—*over nine months ago*. Commonwealth and Wells Fargo objected to the Debtor's disclosure statement for the First Amended Plan because, among other things, the First Amended Plan impermissibly sought to release claims against the non-debtor Limited Partners in plain violation of Ninth Circuit law. The Court agreed with the objecting parties and, on August 26, 2021, entered a minute order reflecting the Court's tentative ruling that the Debtor's plan was "facially <u>unconfirmable</u>". *See* Amended Tentative Ruling p. 1 (emphasis in original). The Court's ruling on the third-party release issue is entirely consistent with the Court's determination that the Debtor and Limited Partners had engineered the Case as an improper forum-shopping strategy from the outset. *See Order on Motion to Remand the Adversary Proceeding in Whole or in Part Under 11 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027(d)*, Exhibit 1 p. 13 ("The Court finds that the Defendants have engaged in forum shopping, both before and after this bankruptcy case was filed. The Court's factual findings show that the Debtor timed its bankruptcy filing to stay litigation of the Alabama State Court Action against <u>all</u> Defendants…") (emphasis in original).

Moreover, the Court's August 26, 2021 minute order expressly provided "for an amended plan & disclosure statement to be filed by 9/27/21…" The Debtor failed to file a further amended plan by such deadline and, indeed, *has not filed any plan during the ensuing seven months*. Since August 2021, the Debtor has not demonstrated any willingness to advance its plan process—and

creditors and other parties-in-interest should no longer be stuck in a chapter 11 case that is plainly going nowhere.

Commonwealth further submits that dismissal is in the best interests of creditors and the estate, rather than conversion to chapter 7. *See Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 612 (9th Cir. B.A.P. 2014) (bankruptcy court must determine whether dismissal versus conversion is in best interests of creditors and the estate). The Debtor has already liquidated substantially all of its assets through the sale to MED Healthcare and distributed the net sale proceeds to Wells Fargo. *See* Notice of Closing, p. 2. There remain no material assets to administer in this Case. Accordingly, the appointment of a chapter 7 trustee—and the retention of professionals for such trustee—would only needlessly increase the already substantial administrative burden on this estate.

## IV.  CONCLUSION

For the foregoing reasons, Commonwealth respectfully requests that the Court dismiss the Case and grant such other and further relief as is just and proper.

Dated: April 8, 2022  BUCHALTER, A Professional Corporation

By: _____/s/ Julian I. Gurule_____

JULIAN I. GURULE
ANTHONY J. NAPOLITANO
BUCHALTER, a Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730

BRENT D. HITSON (admitted *pro hac vice*)
MARC P. SOLOMON (admitted *pro hac vice*)
RICHARD J. BROCKMAN (admitted *pro hac vice*)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203

*Attorneys for Commonwealth Assisted Living, LLC, Series E*

BN 69394013v7

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS CHAPTER 11 CASE**