SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
 James P. Hill, SBN 90478
 Christopher V. Hawkins, SBN 222961
 Kathleen Cashman-Kramer, SBN 128861
600 B Street, Suite 1700
San Diego, California 92101
Tel:            (619) 233-4100
Fax:           (619) 231-4372

Counsel for Debtor and Debtor in Possession,
Vestavia Hills, Ltd., dba Mount Royal Towers

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>VESTAVIA HILLS, LTD., dba<br>Mount Royal Towers<br><br>               Debtor. | CASE NO. 20-00018-LA11<br><br>Chapter 11<br><br>**DEBTOR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO, AND OPPOSITION TO, COMMONWEALTH ASSISTED LIVING, LLC'S MOTION TO DISMISS BANKRUPTCY CASE**<br><br>Date:      May 12, 2022<br>Time:     2:00 p.m.<br>Ctrm:     2<br>United States Bankruptcy Court<br>325 West F Street, Room 118<br>San Diego, CA 92101-6991<br>Judge: Hon. Louise DeCarl Adler |

#5139362v5

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3    I.    INTRODUCTION ........................................................................................ 1

4    II.   STATEMENT OF FACTS ...........................................................................3

5          A.    Events Leading Up to the Filing of Chapter 11 .........................................3

6          B.    Significant Events in the Chapter 11 Case...................................................4

7          C.    Commonwealth Employed a Strafe-and-Burn Strategy
                  During the Chapter 11 Case ......................................................................8

8
           D.    There are Tasks Remaining In the Chapter 11 Case...............................12
9
     III.  LEGAL ARGUMENT .................................................................................18
10
           A.    Section 1112(b) ........................................................................................18
11
           B.    The Facts Do Not Support a Finding of Cause for Dismissal .................22
12
     IV.   CONCLUSION ...........................................................................................23
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2
<u>Page</u>

3

**Cases**

4

5
<u>In re Congoleum Corp.</u>,
        414 B.R. 44 (D. N.J. 2009) (motion to certify appeal denied)......................22

6
<u>In re CRD Sales and Leasing, Inc.</u>,
7
        231 B.R. 214 (Bankr. D.Vt. 1999), leave to appeal granted  232 B.R.
        549 ...........................................................................................................21

8
<u>In re Dark Horse Tavern</u>,
9
        189 B.R. 576 (Bkrtcy. N.D. N.Y. 1995) .......................................................18

10
<u>In re Energy Future Holdings Corp.</u>,
11
        561 B.R. 630 (Bkrtcy. D. Del. 2016) ...........................................................20

12
<u>In re Lizeric Realty Corp.</u>,
        188 B.R. 499 (Bankr. S.D. N.Y. 1995, as amended) ...................................18

13
<u>In re PPI Enterprises (U.S.), Inc.</u>,
14
        324 F.3d 197 (3rd Cir. 20023)........................................................................21

15
<u>In re Shea & Gould</u>,
        214 B.R. 739 (Bkrtcy. S.D. N.Y. 1997) .......................................................19

16
<u>Matter of Woodbrook Associates</u>,
17
        19 F.3d 312 (7th Cir. 1994) ..........................................................................18

18

**Statutes**

19
20
11 U.S.C § 1112(b)(1) ............................................................................................2

11 U.S.C. § 1112(b)(4) .........................................................................................18

21
11 U.S.C. § 1452........................................................................................................11

22
11 U.S.C. § 349.......................................................................................................22

23

**Rules**

24
25
Federal Rule of Bankruptcy Procedure, rule 9027(d)............................................11

26

27

28

Vestavia Hills, Ltd., dba Mount Royal Towers, the Debtor and Debtor in possession herein ("Debtor"), hereby files its opposition to the Motion to Dismiss bankruptcy case (ECF 714) filed by Commonwealth Assisted Living, LLC ("Commonwealth").

## I. __INTRODUCTION__

Commonwealth is trying to limit its litigation losses outside of this Court via gamesmanship in this Court–namely, the instant Motion to Dismiss this Chapter 11 case. This motion is but one more example of Commonwealth misrepresenting the facts and ignoring the reason we are all here–Commonwealth's repeated and unrelenting attempts, via litigation, to burden the Debtor, its Limited Partners, its other creditors, and its property with costs and expenses arising from endless rounds of legal proceedings and meritless motions and maneuvers (in and outside of this Court) for more than two years.

Most recently, Commonwealth suffered another loss in the Alabama State Court Action (defined below). After the Debtor was finally able to close the sale of the Mount Royal Towers business and related assets, and following this Court's order remanding the State Court Action to Alabama (ECF #62 entered October 12, 2021 in adversary no. 20-90060), on December 2, 2021, the Debtor and the Limited Partners each filed their amended answers and counterclaims to Commonwealth's complaint in the Alabama State Court Action. That complaint, as this Court is well aware, was the catalyst which forced the Debtor to file its Chapter 11 case. Outside of Chapter 11, because of Commonwealth's blocking actions, the Debtor was unable to sell its Mount Royal Towers operating assets which it was required to do in order to satisfy the claims of its largest secured creditor, Wells Fargo Bank. Over Commonwealth's various objections, and in spite of Commonwealth's spurious (and unqualified) bid for Mount Royal Towers' assets, and after the rejection of the pre-petition Commonwealth purchase agreement, this Court approved the Debtor's motion to sell Mount Royal Towers. Swift closing of that sale, as this Court is also well aware, was thwarted not only by the

devastating effects of the unprecedented COVID-19 pandemic on the Debtor and Mount Royal Towers, and on the business and affairs of the successful bidder/purchaser, MED Healthcare Partners, LLC ("MED"), but also because, the Debtor contends, of interference outside of this Court by Commonwealth, its principals and its lawyers, in the Alabama licensing process and related transfers of rights needed by MED and the Debtor to close, which required the Debtor to file its motion for an order to show cause re contempt, which finally forced Commonwealth to back off.  Only thereafter, the final conditions to closing were cleared and the sale closed on October 19, 2021.

Following the sale closing and the remand of the Commonwealth litigation to state court in Alabama, and the filing by the Debtor's and the Limited Partners of their amended answers and counterclaims there, on January 17, 2022, Commonwealth filed its motion to dismiss all of those counterclaims.  That motion was heard in the Alabama State Court Action on March 11, 2022, and taken under submission.  On April 5, 2022, the state court issued its order rejecting and denying Commonwealth's motion to dismiss the counterclaims against it.[1]  Three days later, after it lost its motion to dismiss in the state court, Commonwealth filed the instant Motion to Dismiss this Chapter 11 case.

Commonwealth brought this motion under Section 1112(b)(1) of the Bankruptcy Code[2] and asserts that Debtor's "[r]estructuring efforts have clearly come to an end" and that a plan should have been filed by the Debtor by September 21, 2021.  See ECF #714.  As usual, Commonwealth misstates the record in this case.  For the reasons set forth herein, Commonwealth's Motion should be denied.

---

[1] Commonwealth's answer to the counterclaims was initially due April 19, 2022, following the order denying their motion to dismiss, but Commonwealth asked for, and as a professional courtesy, was granted a one-week extension of that deadline.

[2] All references to "Section" are to the Bankruptcy Code, 11 United States Code, unless otherwise specified.

## II. **STATEMENT OF FACTS**

### A. **Events Leading Up to the Filing of Chapter 11**

This case was filed by the Debtor as a voluntary Chapter 11 case on January 3, 2020. ECF #1. No one could have known at that time of the challenges to come, but the COVID-19 pandemic hit the world just two months later, and especially slammed senior care facilities like Mount Royal Towers. Saying that the pandemic made this case more difficult and protracted than anyone would have predicted is a gross understatement.

As set forth in the declarations of Kevin Moriarty filed January 3, 2020 (ECF #9[3]) and February 11, 2020 (ECF #117-3[4]), and the Declaration of Andrew Campbell filed February 11, 2020 (ECF #117-2[5]), this Chapter 11 case was filed because Commonwealth had failed to perform and allowed its contract to purchase the Mount Royal Towers property to terminate, and then Commonwealth prevented the Debtor from selling the property to third parties by filing its complaint and lis pendens. See, generally, the Debtor's complaint for injunctive and declaratory relief against Commonwealth filed February 11, 2020 in adversary no. 20-90029 (the "Commonwealth Adversary").

At the time of the filing of its Chapter 11 petition for relief, the Debtor operated Mount Royal Towers which, prior to COVID, had approximately 150 residents and 150 employees. Complaint, Adv. 20-90029, ECF #1, ¶¶7-8. Wells Fargo, the Debtor's secured creditor, was owed $18,366,477.28 as of December 31, 2017, the date on which the loan became fully due and payable, and Wells Fargo began foreclosure proceedings. Complaint, Adv. 20-90029, ECF #1, ¶¶10-11.

---

[3] In support of the Debtor's First Day Motions.

[4] In opposition to Commonwealth's Motion for Relief from Stay.

[5] In opposition to Commonwealth's Motion for Relief from Stay.

Vestavia and Commonwealth entered into the Purchase Agreement on March 29, 2018 ("Purchase Agreement") which required, at paragraphs 2 and 8, for Commonwealth to purchase Mount Royal Towers for $26,680,000 (which included $8 million in future improvement costs) and for Commonwealth to adhere to an initial outside closing date of October 1, 2018 (the "Outside Closing Date"). The Debtor managed to obtain Wells Fargo's forbearance of its foreclosure to allow the sale to Commonwealth to close, and that forbearance was due to expire on December 14, 2018. Thereafter, despite nine (9) amendments to the Commonwealth Purchase Agreement, Commonwealth failed to perform, including, inter alia, because Commonwealth had not obtained the operating approvals that were required to close the sale, and, as a result, the Purchase Agreement terminated according to its terms. Complaint, Adv. 20-90029, ECF #1, ¶¶13-37.

Commonwealth then commenced its action in state court in Alabama, case no. CV-2018-000390.0 (the "Alabama State Court Action"), in which it sought specific performance[6] of the Purchase Agreement and damages for breach of contract. The Debtor also filed an action against Commonwealth in the U.S. District Court for the Northern District of Alabama. The Alabama State Court Action was removed to this Court and became adversary proceeding no. 20-90060.

## B.    <u>Significant Events in the Chapter 11 Case</u>

In the 27 months that have passed since this Chapter 11 case commenced, the Debtor has indeed accomplished a lot, even if it has not yet confirmed a plan of reorganization. The following list of significant accomplishments is but a sample:

1.    The Debtor's Limited Partners stepped up and agreed to be the Debtor's post-petition lenders in order to keep the doors open. See ECF #s 15 (the motion) and

---

[6] After this Chapter 11 case was filed, Commonwealth abandoned its specific performance claim under the Purchase Agreement, when it acknowledged that the Debtor would be rejecting that agreement. See ECF #130, p.1. Obviously, if specific performance had been granted, Commonwealth would have had to pay full price (as adjusted by various amendments to the purchase agreement to approximately $19 Million for the same assets which (as described below) were instead sold in the Chapter 11 case for $12,000,000 to MED.

48 (order).[7]  They have yet to be repaid anything on these post-petition loans[8], although the Debtor expects that there will be sufficient funds available when it liquidates and collects on its remaining most valuable asset, namely, its claims against Commonwealth (discussed below), which will be sufficient  to pay those post-petition loans in full.

2.      The Debtor sought and obtained an order from the Court under which the SBA was required to accept the Debtor's PPP loan application, and under which the Debtor received $1,138,104.79 that was used as intended to help keep Mount Royal Towers up and running and its employees paid during the height of the COVID pandemic.  See ECF #s 26 and 27 entered June 26, 2020 in adversary no. 20-90073.  The adversary proceeding, which the Debtor brought against the SBA on May 27, 2020 (Adv. Proc. 20-90073), was eventually settled, after appeals to the United States District Court and then to the United States Court of Appeals for the Ninth Circuit, achieving a resolution requiring the Debtor to repay only $109,000 (i.e., less than 10 percent of the total amount of the $1,138,104.79 PPP loan), and qualifying the remainder of the PPP loan for forgiveness totaling $1,029,104.79, and which has since been formally forgiven. See ECF #679 (the order approving the settlement with the SBA).

3.      The wrongful death claims on behalf of Charles Smith were resolved following settlement negotiations though application of insurance policy proceeds. ECF #220 (order entered April 24, 2020).

4.      After much negotiation, as well as an adversary proceeding that the Debtor filed against Wells Fargo, all claims as between the Debtor and Wells Fargo were fully resolved.  See adversary no. 20-90083 and ECF #639 (the order entered November 21, 2021 approving the settlement agreement with Wells Fargo).  The Debtor and its Limited

---

[7] Commonwealth objected to the form of the order on this motion (ECF #46) and lodged an alternative order (ECF #47), but the Court entered the Debtor's proposed order instead.

[8] The Limited Partners each filed proofs of claim on April 9, 2021 for the amounts advanced through that time; each proof of claim was filed in the amount of $525,365.42.  See proofs of claim 19, 20, 21, 22, and 23.

Partners continue to perform their remaining obligations under the settlement agreement with Wells Fargo.

5.    Over Commonwealth's baseless objections and maneuvers, including its ersatz and unqualified "bid" for the Debtor's assets, the Debtor obtained approval of the sale of its Mount Royal Towers property and related business assets to MED for $12,000,000. See ECF #381 (order approving the sale entered August 31, 2020). Commonwealth failed and refused to submit a qualified bid, even though the ultimate sale price for the assets was more than $6 million less than it had promised to pay in its 2018 Purchase Agreement.

6.    The Debtor settled significant disputes with the Jefferson County (Alabama) Tax Assessor and Board of Equalization relative to the erroneous assessments made by these taxing authorities for the Debtor's Mount Royal Towers property for tax years 2019 and 2020.  See ECF #s 482 filed March 17, 2021 (the notice of intended action) detailing the disputes and the order approving the settlement (ECF #498 filed April 13, 2021.

7.    While the Debtor has not yet confirmed a plan, it has in fact filed and served a disclosure statement and plan prior to the time that all matters with Wells Fargo were settled.  Although Commonwealth had opposed that disclosure statement and plan, the fact of the settlement with Wells Fargo, and the closing of the sale to MED, makes a plan of reorganization more possible, as this Court recognized at the January 20, 2022 Chapter 11 Status Hearing in this case.

8.    At Commonwealth's request, and also as specifically requested in the Debtor's motion to approve the bid procedures for the sale, the pre-petition Purchase Agreement with Commonwealth was rejected. The Debtor's sale motion (ECF #121, filed February 13, 2020) made quite clear at page 23: "[A]s of the Petition Date, the Debtor does not believe that the terminated Commonwealth Agreement was executory. Nonetheless, out of an abundance of caution, with this Motion, the Debtor seeks Court approval to reject the Commonwealth Agreement to the extent it is executory, pursuant

to Section 365. As has become clear, attempting to further engage with Commonwealth will only lead to further litigation–the last thing the Debtor can afford, and the last thing that the residents of Mount Royal Towers need and deserve. To the extent that the Commonwealth Agreement remains executory–which the Debtor disputes–it holds no benefits for the estate, only burdens, and rejecting it will pave the way for the proposed sale, realizing maximum value for the Debtor's Assets, and ensuring continued quality of care for residents. Accordingly, rejection is in the best interests of the estate, and well warranted by the Debtor's business judgment."  The Court's order on the bid procedures, over Commonwealth's objections, was entered March 25, 2020.  See ECF #185.  Prior to and throughout the sale process, the Debtor has reserved at all times its position that there was nothing to reject, since the purchase agreement with Commonwealth had terminated pre-petition, according to its terms.  This position was recognized and adopted by this Court and recited in the Order on Commonwealth's own motion: "[T]he Court makes no substantive determination of the disputed issues regarding the Purchase Agreement, including, inter alia, whether the Purchase Agreement is executory or not or was terminated prepetition or not.  All of the parties' rights, claims, defenses and arguments are expressly reserved and preserved."  See ECF #186, p. 2.

9.     On November 10, 2020, the Debtor filed an ex parte application (ECF #405) asking the Bankruptcy Court to issue an order to show cause why Commonwealth, MCAP, and its principals and their attorneys (collectively, the "Contempt Parties") should not be held in contempt for violating the Sale Order (the "Contempt Application") based upon the Contempt Parties having actively interfered with the sale to MED by engaging in affirmative blocking activities before the State Health Planning and Development Agency of the State of Alabama ("SHPDA") relating to issuance of the Certificate of Need ("CON") for the 113 SCALF beds which were to be ultimately delivered to MED upon closing of the Bankruptcy Sale (the "Competing CON Application"). Specifically, the Contempt Parties pursued the Competing CON Application despite the fact that Commonwealth and MCAP had not been approved as

a Qualified Bidder pursuant to this Court's Order entered July 30, 2020 (ECF 369) and despite the rejection of the pre-petition purchase agreement which formed the basis of their Competing CON Application. The Debtor was required to incur thousands of dollars in fees and costs successfully seeking the dismissal of the Competing CON Application.[9]

### C.    Commonwealth Employed a Strafe-and-Burn Strategy During the Chapter 11 Case

From the commencement of the Chapter 11 case until at least mid-2021, Commonwealth opposed nearly every action that the Debtor took in this case.  Until the end of 2021, virtually all of Commonwealth's attempts to shut the Debtor down and cause it to capitulate to its assaults have failed, as evidenced by the Commonwealth filings and various orders entered in this case including the following:

1.    On 1/09/2020 (ECF #21), Commonwealth filed an Omnibus Objection to Motions for (I) Approval of Debtor-in-Possession Financing; (II) Allowance of Insider Compensation; and (III) A Determination that a Patient Care Ombudsman is Unnecessary;

2.    On 1/21/2020 (ECF #46), Commonwealth filed an Objection to Proposed Form of Interim DIP Order;

3.    On 1/22/2020 (ECF #49), Commonwealth filed a Motion to Seal Documents;

4.    On 1/24/2020 (ECF #56), Commonwealth filed a Motion for Relief from Stay to continue the Alabama State Court Action;

---

[9] The Debtor always reserved, and did not waive, its right to pursue any and all claims concerning Commonwealth's wrongful and/or improper conduct during the Chapter 11 in this Court. As this Court explicitly noted in the transcript of the proceeding granting the Motion to Remand Commonwealth's claims to state court: "If they're a claim for damages that have to do with a violation of this Court's order, there's no reason why you can't bring a plain old 362 (k) motion for damages–for postpetition damages, and I suppose if the debtor prevails in–Commonwealth prevails in state court, you can use it as a defense to the claim objection . . . . [Such Claims] remain to be ultimately determined by this Court." Transcript September 21, 2021, Motion to Remand and/or for Abstention; pages 36: ll. 14–20 and 37: ll. 1–2 [ECF #600].

5.      On 1/28/2020 (ECF #73), Commonwealth filed an Objection to the Notice of Intended Action and Opportunity for Hearing to pay insider compensation;

6.      On 1/29/2020 (ECF #76), Commonwealth filed a Supplemental Objection to the Notice of Intended Action regarding insider compensation;

7.      On 2/10/2020 (ECF #114), Commonwealth filed an Objection to Ex Parte Applications to Employ Campbell Partners as Special Litigation Counsel;

8.      On 2/18/2020 (ECF #130), Commonwealth filed a motion for an Order Compelling Debtor to Assume or Reject Purchase Agreement;[10]

9.      On 2/18/2020 (ECF #131), Commonwealth also filed a Motion to Shorten Time for Hearing on Commonwealth's Motion to Compel Debtor to Assume or Reject Purchase Agreement;

10.     On 2/18/2020 (ECF #132), Commonwealth filed its Reply to the Debtor's opposition to its Motion for Relief from the Automatic Stay;

11.     On 2/24/2020 (ECF #145), Commonwealth filed its Reply to the oppositions to Its Ex Parte Application for Order Shortening Time;

12.     On 2/28/2020 (ECF #153), Commonwealth filed its Objection to Debtor's Bid Procedures Motion;

13.     On 3/9/2020 (ECF #166), Commonwealth filed its Reply in connection with its motion for an Order Compelling Debtor to Assume or Reject Purchase Agreement;

14.     On 4/08/2020 (ECF #202), Commonwealth filed an Objection to the Debtor's Motion for a Protective Order;

---

[10] Commonwealth's motion was not necessary, since the Debtor had already filed, in connection with its bid procedures motion filed on February 13, 2020, its affirmative request that the Commonwealth Purchase Agreement be formally rejected (although the Debtor maintained that it had terminated pre-petition). See ECF #121, the Motion and supporting documents.

15.     On 4/28/2020 (ECF #224), Commonwealth filed an Ex Parte Motion for an Order (I) Scheduling a Hearing on Remand and/or Abstention Motion and Relief from Stay Motion and (II) Setting Deadlines for Supplemental Briefs;

16.     On 5/12/2020 (ECF #248), Commonwealth filed a Motion to Compel the Debtor to (I) Enter into NDA; (II) Allow Access to Due Diligence Materials; and (III) Allow Inspection of Exterior Retaining Wall;

17.     On 5/13/2020 (ECF #252), Commonwealth filed opposition to the Debtor's Motion to Amend Overbid Procedures and Deadlines and to Set New Date for Final Sale Hearing;

18.     On 6/02/2020 (ECF #283), Commonwealth filed another Ex Parte Motion to Seal Document(s);

19.     On 7/16/2020 (ECF #329), Commonwealth filed its opposition to Debtor's Motion to Sell Assets Free and Clear;

20.     On 7/20/2020 (ECF #336), Commonwealth filed a motion for an Order Qualifying MCAP Birmingham, LLC's Overbid in Connection with Auction and Sale of Substantially all of Debtor's Assets.  On that same date, it also filed (ECF #338) an Ex Parte Application for Order Shortening Time for Hearing on Motion of Commonwealth Assisted Living, LLC, Series E for An Order Qualifying MCAP Birmingham, LLC's Overbid;

21.     On 7/21/2020 (ECF #342), Commonwealth filed a Supplemental Objection to Debtor's Motion to Sell Assets Free and Clear;

22.     On 7/23/2020 (ECF #354), Commonwealth filed a Statement re: Motion to Qualify MCAP Birmingham's Bid;

23.     On 11/11/2020 (ECF #409), Commonwealth filed its Objection to Debtor's Ex Parte Application for Issuance of an Order to Show Cause Re Contempt of Court's Order Approving Sale of Estate Property, Holding Certain Parties and Their Counsel in Contempt, Sanctions;

24.     On 11/18/2020 (ECF #417), Commonwealth filed a Supplemental Objection to Debtors Ex Parte Application for Issuance of an Order to Show Cause Re: Contempt of Court's Order Approving Sale of Estate Property, Holding Certain Parties and Their Counsel in Contempt, Sanctions, and Other Appropriate Relief;

25.     On 1//26/2021 (ECF #447), Commonwealth filed a statement Re Debtor's Fourth Motion to Extend Exclusivity Periods;

26.     On 7/09/2021 (ECF #522), Commonwealth filed a Notice of Continued Hearing on Motion for Relief from the Automatic Stay;

27.     On 07/30/2021 (ECF #532), Commonwealth filed its Objection to Debtor's Chapter 11 Plan of Reorganization Dated July 2, 2021;

28.     On 7/30/2021 (ECF #s 533, 534, 537), Commonwealth filed its Supplemental Brief in Support of Commonwealth's Motion for Relief from Stay and related documents and declarations;

29.     On 7/30/2021(ECF #s 37, 41-45 in adversary no. 20-90060; see also ECF #536), Commonwealth filed its brief and supporting documents and declarations in Support of Commonwealth's Motion to Remand Adversary Proceeding in Whole or in Part Under 11 U.S.C. § 1452 and Federal Rule of Bankruptcy Procedure 9027(d);

30.     On 8/09/2021 (ECF #s 558, 562, 563, 564, and 565), Commonwealth filed its Objection to the Limited Partners Motion to Consolidate Their Objection to Commonwealth's Proof of Claim No. 10 with the Adversary Proceeding;

31.     On 8/30/2021 (ECF #581), Commonwealth filed its reply to the Debtor's opposition to Commonwealth's Motion for Relief from the Automatic Stay;

32.     On 9/15/2021 (ECF #593), Commonwealth filed it Responses to Joint Evidentiary Objections to Omnibus Declarations Filed in Support of Commonwealth Assisted Living, LLC, Series Es: (A) Motion for Relief From Stay; (B) Preliminary Response to Limited Partners Motion and Objection to Commonwealth Claim Number 10; and (C) Motion to Remand Adversary Proceeding;

33.     On 10/01/2021 (ECF #s 601, 602, 602, 604), Commonwealth filed Notices of Lodgment of various Orders;

34.     On April 8, 2022 (ECF #s 714, 715, 716, 717, 718, 719), Commonwealth filed its Motion to Dismiss the Chapter 11 Bankruptcy Case.

With rare exception, all of Commonwealth's objections, oppositions and motions, and particularly so as to the instant Motion to Dismiss, have been filed by its counsel without any attempt at meeting and conferring with Debtor's counsel or with the Limited Partners' counsel beforehand.  The Debtor believes that such failures to engage in meaningful dialogue aimed at minimizing costs and consumption of time of counsel, and this Court, belies Commonwealth's real motive and strategy, namely, to add expense and delay on the Debtor.  In reality, despite its professed (and false) concern about the enormous costs that the Debtor and its Limited Partners have been forced to bear, Commonwealth is the root cause of those expenses.  It will ultimately pay for its actions upon the conclusion of the Alabama State Court Action, which is now "at issue" and moving forward to trial.

**D.     There are Tasks Remaining In the Chapter 11 Case**

Despite Commonwealth's unsupported statement that there is nothing left to be done in this Chapter 11 case, there are indeed tasks that support continued jurisdiction in Chapter 11 as the case narrows to a simpler conclusion. Specifically, there is presently pending a settlement of another dispute that the Debtor had with the taxing authorities in Jefferson County (Alabama) over the 2021 property tax assessment of the underlying Mount Royal Towers assets.[11]   See ECF #720 filed April 14, 2022.  In addition, the Debtor estimates that there are approximately $250,000 remaining in unsecured claims to be addressed in this case (exclusive of the remaining balance of the Wells Fargo claims that are being paid as agreed pursuant to the schedule of settlement

---

[11] Once approved, the Debtor will receive a refund of approximately $107,000 from the Jefferson County (Alabama) Board of Equalization.  See ECF #720.

payments, and exclusive of any unsecured claim which Commonwealth asserts, and which, of course, the Debtor disputes and estimates as zero in amount).

Further, and which the Debtor has always made clear (see, for examples, ECF #s 9, 117-2 and 117-3), the Debtor has significant claims against Commonwealth which were detailed in the counterclaims filed on December 2, 2021 in the Alabama State Court Action. See the accompanying Declaration of J. Harris Hagood in support of this Opposition, and Exhibit "B" thereto. These claims include but are not limited to: claims for damages the Debtor has against Commonwealth for actions Commonwealth took to cloud title on the Mount Royal Towers property and prevent the Debtor from realizing a sale of the property for more than two years; causing the Debtor to incur unnecessary expenses by filing numerous unmeritorious pleadings; and ultimately requiring the Debtor to file for Chapter 11 relief and incur the enormous costs of this case, all of which Commonwealth will have to pay upon a favorable conclusion of the Alabama State Court Action to the Debtor–and which will be used first and foremost to satisfy creditor claims in this case.

This Court recognized all of the foregoing remains to be decided, and reserved them for a later date. Specifically, as late as the last Chapter 11 Status Hearing on January 20, 2022, the Court observed that giving the Debtor more time for it to further narrow the issues in this case will in fact aid the chance for a successful reorganization. The Court and all parties were well aware that the Debtor would not be filing an amended disclosure statement and plan before there was some resolution in the Alabama State Court Action regarding the claims as between the Debtor and Commonwealth. Specifically, at the Status Hearing conducted on January 20, 2022 (see ECF #672, minute order), and in the Debtor's tenth status report filed January 13, 2022 (ECF #663), Mr. Hill, on behalf of the Debtor, reported as much, and at the Status Hearing explained to the Court:

> **MR. HILL:** THANK YOU, YOUR HONOR. THERE'S A FEW MORE THINGS GOING ON AND YOU'RE GOING TO SEE THEM COME UP

IN THE VERY NEAR FUTURE. WE ARE FOCUSSING [sic] NOW ON ADMIN AND PRIORITY CLAIMS. YOU DID JUST ENTER AN ORDER AUTHORIZING A SUPPLEMENTAL ADMINISTRATIVE BAR DATE, AND THAT'S BEING SERVED. I THINK IT'S GOING OUT TODAY, OR TOMORROW AT THE LATEST; THAT'S THE DEADLINE FOR US TO SEND IT OUT. AND WE WILL BE FOCUSSING [sic] ON THOSE BECAUSE, AS YOU ARE WELL AWARE, YOU KNOW, WE'VE GOT A CLEAN HOUSE NOW. THE SALE HAS CLOSED. AND WE WOULD BE IMPLEMENTING THE SBA SETTLEMENT THAT YOU APPROVED, AND YOU'LL BE SEEING AN ORDER ON THAT IF NOT TODAY, CERTAINLY TOMORROW. WE DID JUST FILE TWO REQUESTS FOR 2004 EXAMS ON JEFFERSON COUNTY. WE KIND OF ADDRESSED IT IN THE REPORT, BUT WE JUST FILED THE REQUEST FOR 2004 EXAMS, SO YOU'LL SEE THOSE. HOPEFULLY WE'LL GET MATTERS WORKED OUT WITH THE COUNTY, BUT, YOU KNOW, IT MAY REQUIRE A 505 PROCEEDING -- SECTION 505 PROCEEDING, WHICH YOU'VE SEEN BEFORE IN THIS CASE. AND THEN FINALLY, AS MR. GURULE CAN CONFIRM, COMMONWEALTH LITIGATION IS GOING ON IN ALABAMA AND WE ARE GOING FORWARD WITH THAT. AND IF WE HAVE TO, WE'LL BE BACK BEFORE YOUR HONOR AT THE CONCLUSION OF THAT, CONSISTENT WITH YOUR PRIOR ORDERS, TO ADDRESS AFFIRMATIVE CLAIMS OF THE DEBTOR AND/OR OBJECTIONS TO THE CLAIMS OF THE DEBTOR TO COMMONWEALTH IF THEY SURVIVE THE ALABAMA LITIGATION. I DON'T REALLY HAVE ANYTHING ELSE, BUT I DID JUST WANT TO ALERT YOU WHERE OUR FOCUS IS TURNING IN THE INTERIM WHILE THAT ALABAMA LITIGATION PROCEEDS.

**THE COURT:** DO YOU HAVE AN IDEA OF WHAT – THE TIMETABLE OF THE ALABAMA LITIGATION?

**MR. HILL:** YOUR HONOR, AS WE REPORTED IN THE STATUS REPORT AND WHAT WAS RELAYED TO US BY OUR ALABAMA COUNSEL, IS THE DISCOVERY CUTOFF IN THAT CASE IS END OF 2022, DECEMBER 2022; AND THEREFORE TRIAL AND DISPOSITIVE MOTIONS ARE NOT EXPECTED UNTIL AFTER THAT DISCOVERY CUTOFF.

Transcript, pp. 5–6.  Thereafter, on page 7, Ms. Hong of the U.S. Trustee's office requested that the Court set a deadline for the Debtor to file a plan.  In response, the Court asked:

> **THE COURT:** MR. HILL, IS THE DEBTOR GOING TO BE SERIOUSLY PURSUING PLAN CONFIRMATION, OR ARE THEY JUST USING THIS AS A HOLDING PATTERN UNTIL SOME OF THESE OTHER ENDS GET TIED DOWN?
>
> **MR. HILL:** YOUR HONOR -- AND WELCOME TO THE CASE, MS. HONG. IN LIGHT OF YOUR PRIOR RULINGS, INCLUDING RECOGNIZING WHAT APPEARS TO BE A TREND IN OUR COUNTRY RIGHT NOW AGAINST THIRD-PARTY STAYS AND INJUNCTIONS -- AT LEAST AS YOU FELT IN OUR LAST PLAN -- AND GIVEN THE ORDERS TO PROCEED WITH TRIAL WITH COMMONWEALTH IN ALABAMA, WE DO NOT BELIEVE IT IS APPROPRIATE TO GO FORWARD WITH A PLAN GIVEN THE UNCERTAIN STATUS OF THE COMMONWEALTH CLAIMS. WE HAD HOPED TO BE ABLE TO RESOLVE THOSE CLAIMS IN THIS COURT IN A MORE EXPEDITED FASHION. I THINK YOUR HONOR PROBABLY WAS OF THE IMPRESSION THAT CLAIMS WOULD BE RESOLVED QUICKLY IN ALABAMA. I THINK THEY'RE BEING RESOLVED AS QUICKLY AS THEY CAN BE IN ALABAMA. BUT, NO, YOUR HONOR, AT THE PRESENT TIME, CERTAINLY NOT WITHIN THE NEXT 120 DAYS, WE DO NOT INTEND TO AMEND THE PLAN AND DON'T THINK IT'S APPROPRIATE IN LIGHT OF YOUR RULINGS IN THIS CASE YET. THAT SAID, MOST OF THE CLAIMS HAVE BEEN ADDRESSED. AND LIKE I SAID, WE'RE GOING TO BE ADDRESSING THE ADMIN CLAIMS, GOING THROUGH THOSE, NOW THAT YOU'VE SET ADMINISTRATIVE CLAIMS BAR DATE AGAIN, AND WE WILL TRY TO GET THOSE RESOLVED. IT MAY WELL BE, YOUR HONOR, THAT WE WILL ADDRESS THOSE OUTSIDE OF A PLAN, LEAVING VERY LITTLE OTHER THAN COMMONWEALTH TO BE RESOLVED. AND I HAVE NO PROBLEM WITH SPEAKING WITH MS. HONG AFTER THIS CALL TO GIVE HER A BROADER VIEW OF THIS CASE. BUT A LOT HAS HAPPENED. A LOT OF CLAIMS HAVE BEEN SATISFIED. AND THIS CASE IS NARROWING DOWN VERY QUICKLY, YOUR HONOR, TO WHAT I'LL CALL A TWO-PARTY DISPUTE IF YOU -- REALLY THREE PARTIES, WITH THE

LIMITED PARTNER GROUP, THE DEBTOR AND COMMONWEALTH. YOU KNOW, WHEN IT GETS DOWN TO THAT LEVEL, IT WILL BE PERHAPS SIMPLER TO RESOLVE.

**THE COURT:** AND PERHAPS SIMPLER TO RESOLVE WITHOUT A PLAN.

Transcript, pp. 8–9.  The discussion continued:

**MR. SMELKO:** THE OTHER THING THAT THE 120 DAYS GETS US IS PAST COMPLETION, REALLY, OF THE WELLS FARGO SETTLEMENT AGREEMENT PAYMENTS. WE ARE DANGEROUSLY CLOSE AT THE END OF 120 DAYS TO MAKING THAT COMPLETELY PAID OFF, WHICH DOES THEN NARROW THINGS DOWN TO THE LAST PERSON STANDING, WHICH WOULD BE COMMONWEALTH.

**THE COURT:** OKAY. ALL RIGHT. FRANKLY, MS. HONG, I HAD NOT FOCUSED ON THE FACT THAT THEY HADN'T HAD A PLAN ON FILE, BECAUSE THEY DID, AND OTHER THINGS HAPPENED AND OTHER THINGS HAPPENED AND OTHER THINGS HAPPENED. SO HAVING A PLAN IN THIS CASE IS LIKE THE CHILD'S GAME OF MAGIC SLATE. WE GET A PLAN, AND THEN EVERYTHING GOES SIDEWAYS, AND WE HAVE TO HAVE ANOTHER PLAN. SO AT THIS POINT, IF THE DEBTOR THINKS THAT SOME ADDITIONAL TIME TO RESOLVE CLAIMS WOULD BE HELPFUL AND THEN JUST LEAVE THE RESOLUTION OF THE COMMONWEALTH CLAIMS AS THE FINAL MATTER TO RESOLVE IN THIS CASE, I'M TEMPTED TO LET THEM TRY, BECAUSE IT'S PROBABLY A LOT EASIER TO POSE A PLAN AROUND ONE CREDITOR THAN TO STILL HAVE OTHERS WHOSE CLAIMS ARE IN PLAY. SO I'M GOING TO GO FORWARD WITH THE 120-DAY CONTINUANCE THAT I'VE SUGGESTED TO COUNSEL THAT I'M WILLING TO DO.

Transcript, pp. 9–10.  A true copy of this Transcript is attached hereto as Exhibit "1."

In short, as this Court has already observed, given the many accomplishments and successes the Debtor has achieved in the Chapter 11 case, despite Commonwealth's repeated and unrelenting oppositions and objections, Commonwealth's claim that the Debtor is nothing more than a shell (ECF #714) and has nothing more to do here, is a

figment of Commonwealth's imagination and a fairy tale foisted up to obfuscate the true facts of the case:  namely, that Commonwealth's Motion to Dismiss is a thinly-veiled attempt to gain some sort of litigation advantage to wave in front of the Alabama state court, and really to hide its own wrongdoing and obfuscation, all of which it has failed to gain in this Chapter 11 case over the past two years where it has opposed virtually everything that the Debtor filed and sought up through the closing of the sale to MED and the Debtor's key settlement with its single largest creditor, Wells Fargo Bank.

In addition, and of most importance, dismissal of this Chapter 11 case would call into question the viability of the numerous orders which this Court has issued over the last 27 months, which orders impact so many people and businesses.  Those orders include but are not limited to: (1) orders approving financing (ECF #48); (2) the order approving the bid procedures (ECF #185) and the sale to MED (ECF #381); (3) the orders approving the Debtor's settlements with Wells Fargo (ECF #639), the SBA (ECF #679), the Jefferson County (Alabama) Board of Equalization and Tax Assessor (ECF #498), and others; and (4) the order approving the rejection of the Commonwealth Purchase Agreement (ECF #186). Given the ongoing litigation in Alabama (which obviously is not going as Commonwealth wishes and is proceeding to trial including the Debtor's and the Limited Partners' counterclaims), the Debtor strongly opposes any attempt by Commonwealth to dismiss this case and thereby, sub silentio, to undermine the continuing force and enforceability of each and all orders entered in this case–and particularly so as to the order approving the bid procedures and ancillary relief (ECF #185), the sale to MED (ECF #381), and the order rejecting the Commonwealth Purchase Agreement (ECF #186), which Agreement is at issue in the Alabama State Court Action.

## III.    LEGAL ARGUMENT

The Debtor submits that Commonwealth–which bears the burden–has not established that cause exists for dismissal of this Chapter 11 case at this time. For the reasons set forth herein, its Motion to Dismiss should be denied.

### A.    Section 1112(b)

#### 1.    The Burden is on Commonwealth

If a motion to dismiss Chapter 11 case for cause is opposed, the movant bears the burden of proving by preponderance of evidence that cause exists for dismissal. Matter of Woodbrook Associates, 19 F.3d 312, 317 (7th Cir. 1994) , rehearing denied; see also In re Dark Horse Tavern, 189 B.R. 576, 580 (Bkrtcy. N.D. N.Y. 1995). In addition, a creditor seeking dismissal of a Chapter 11 case based on continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation, inability to effectuate plan, or unreasonable delay by the debtor that is prejudicial to creditors, must prove by preponderance of evidence that there is cause for relief. In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D. N.Y. 1995, as amended). Finally, dismissal of a Chapter 11 case that has been pending for some time is a drastic measure and only used sparingly. In re Dark Horse Tavern, Id., at 580.

As set forth above, Commonwealth has not carried its burden to establish sufficient cause to dismiss. In this case, it has failed to demonstrate any of the factors which Section 1112(b)(4) lists as possible causes to dismiss, to wit: there is no continuing loss or diminution in value; there is not gross mismanagement; insurance is no longer an issue since the sale closing; and there has been no unauthorized use of cash collateral. To the extent there has been delay in this case getting to its conclusion, any delay is attributable to the unprecedented COVID pandemic and to Commonwealth's interference in the sale process. In sum, none of these factors exist, nor do any other factors exist were the Debtor to continue to list out and rebut the full Section 1112(b)(4) grounds for dismissal. Not a single one of the listed bases for "cause" applies here.

2.   **Commonwealth's Laches Requires its Motion to Dismiss Be Denied**

As set forth above, the facts demonstrate that, rather than bringing the instant dismissal motion earlier in this case, Commonwealth engaged in significant and expensive litigation tactics within this case in an effort to crush the Debtor and, to a lesser extent, its Limited Partners, in an attempt to bend them to its will.  As enumerated above, virtually all activity in this case has been opposed by Commonwealth.  While the Debtor prevailed on most of these matters, and certainly so on the most important, namely, the sale of its Mount Royal Towers assets, the reality is that Commonwealth is the cause of repeated and continued multiplication of these proceedings, at a cost for which it will pay upon the conclusion of the Alabama State Court Action. Notwithstanding Commonwealth's best efforts, the Debtor believes that this case has been a success to date–for Mount Royal Towers' residents and employees, and also for the most significant and largest creditors, namely, Wells Fargo Bank and the SBA. The case is fast approaching the point where, as this Court observed at the last Chapter 11 Status Hearing, there is more that the Debtor must do, and is doing, to deal with the remaining issues and claims of the rest of the creditors in this case as it gets to the point that all that remains is resolution of its and the Limited Partners' claims against Commonwealth in the Alabama State Court Action, and following resolution of that action, back in this Court on the affirmative claims and defenses against Commonwealth that this Court reserved for resolution here.

A court has the discretion to deny a motion to dismiss a Chapter 11 case on the bases of laches.  See In re Shea & Gould, 214 B.R. 739, 742 (Bkrtcy. S.D. N.Y. 1997) (Chapter 11 trustee precluded from moving, roughly 19 months after commencement of dissolved New York partnership's liquidating case, for entry of order dismissing case on ground that partnership was ineligible for Chapter 11 relief, since the debtor had expended significant time and money over 19 months in dealing with administration of its case and, particularly, in negotiating amended liquidating plan with interested

parties); <u>see also</u> <u>In re Energy Future Holdings Corp.</u>, 561 B.R. 630, 645-46 (Bkrtcy. D. Del. 2016) (motion filed 31 months after commencement of jointly administered Chapter 11 cases of debtors facing significant exposure on asbestos damages claims, by asbestos claimants who had failed to file proofs of claim prior to expiration of asbestos claim bar date, seeking to dismiss debtors' Chapter 11 cases under "for cause, could be denied on procedural grounds, as barred by doctrine of laches, where asbestos claimants did not offer sufficient explanation for their delay in filing dismissal motion, and where motion, which they filed in attempt to be relieved of consequences of their not filing timely proofs of claim, would have significant prejudicial consequences for debtors and for asbestos claimants who had filed timely proofs of claim).

At this juncture, it would be manifestly unfair to the Debtor, its other creditors, and all those who have benefitted from the many entered and long-final orders in this case, to reward Commonwealth's obstructionist conduct by dismissing the case at this late stage of the case. The unjustness of such a result is especially apparent given that Commonwealth seems intent through its Motion to Dismiss to escape this Court's jurisdiction on the Debtor's affirmative claims and defenses against Commonwealth that this Court expressly reserved for resolution in this Court following final resolution of the Alabama State Court Action. The Debtor has performed and is performing on all orders that this Court has entered in this case–from the sale order with MED, the settlement order with Wells Fargo, the settlement order with the SBA, the settlement orders with the Jefferson County taxing authorities, the settlement order with Charles Smith, and even the orders on remand and relief from the automatic stay that sent the Alabama State Court Action back to state court for resolution. The Motion to Dismiss brought now by Commonwealth is a bald faced litigation tactic designed to thwart and escape from the effect and finality of all of the forgoing orders, and now also from the threat and likelihood of more adverse orders against it in this Court.

**3.    A Dismissal is Inappropriate When this Court's Jurisdiction Was Properly Invoked and for a Proper Purpose**

As set forth above, this Chapter 11 case was filed because Commonwealth sought to tie up the Debtor's Mount Royal Towers property indefinitely, when it had no ability or intent to close a sale that had been negotiated and renegotiated for almost two years before the Chapter 11 case had to be filed. The only way for the Debtor to preserve the value of its property–which had substantial value, and its need to protect its elderly residents, and its further need to preserve its employees' jobs–was through the Chapter 11 filing. The Debtor has been able to accomplish all of these aims, and more, thus far. It should be allowed to finish what it started–in accord with this Court's orders and reserved jurisdiction to deal with the damage that Commonwealth has caused.

As long as the Debtor was taking advantage of rights specifically granted under the Bankruptcy Code–in this case, approving a sale of property free and clear–the case should not be dismissed. See In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 211-12 (3rd Cir. 20023) (bankruptcy court did not abuse its discretion in deciding not to dismiss a Chapter 11 case even though there was no ongoing business, only one employee, and little in remaining assets, where the debtor filed the Chapter 11 petition primarily to cap lessor's damages claim for debtor's breach of lease); see also In re CRD Sales and Leasing, Inc., 231 B.R. 214, 222 (Bankr. D.Vt. 1999), leave to appeal granted  232 B.R. 549 (bankruptcy court would not dismiss "liquidating" Chapter 11 case filed by debtors with no intent of reorganizing where debtors had properly invoked bankruptcy court's jurisdiction to obtain determination on equitable subordination issue).

The Debtor is performing under all orders of this Court precisely as this Court has envisioned and ordered, and as for the state court action, exactly as Commonwealth asked. Now, Commonwealth comes before this Court to complain that the Debtor should be kicked out of Chapter 11 when the focus narrows to it–when it does not like what is happening back in Alabama, or what this Court has reserved for decision later in this Court when the Alabama State Court Action is resolved.

**4.** **Dismissal Would Cause Significant Disruptions with the Results of this Court's Already-Executed and Final Orders**

The Debtor submits that dismissal of this Chapter 11 case is not in the best interest of creditors and would constitute an abuse of discretion because of the effect such a dismissal would have on everything that has happened over the last 27 months since this case was filed. A dismissal of a Chapter 11 case in which there has been significant activity must adequately take into account the consequences of dismissal. See, e.g., In re Congoleum Corp., 414 B.R. 44, 61 (D. N.J. 2009) (motion to certify appeal denied). In this case, dismissal–which has the effect of undoing the many orders entered and events that have occurred in this case (see Section 349)–will undoubtedly adversely impact and cast unnecessary uncertainty upon scores of people and businesses that have relied on the Debtor functioning as a debtor in possession in Chapter 11 for the last 27 months, and further question the continuing viability of actions taken and orders issued by this Court. For this additional reason, the Debtor submits that this Court should exercise its discretion and deny Commonwealth's Motion to Dismiss.

**B.** **The Facts Do Not Support a Finding of Cause for Dismissal**

As set forth above, much has been accomplished in the 27 months since this case was filed; including the fact that the Debtor was able–despite the unprecedented and unforeseen COVID pandemic–to keep Mount Royal Towers open and operating, its residents healthy, and its staff employed, until the sale to MED Healthcare was able to close finally on October 19, 2021. This achievement alone was a monumental task, which the Debtor would not have accomplished without the protection and guidance of this Court and the Bankruptcy Code during this most difficult period, and in spite of Commonwealth's repeated interference in the process. During this time, thanks to the support of its Limited Partners, the Debtor resolved the significant claims of Wells Fargo, which received 100 percent of the net proceeds of the sale upon closing, and which is being paid its unsecured claim in accordance with the agreed payment schedule under the terms of the settlement reached with it, which this Court blessed by its

approval order.  See ECF #639.  The Debtor was also able to secure a PPP loan–despite the fight with the SBA over whether it was "qualified" to receive such funds–in the amount of $1,138,104.79, which was essential to keep Mount Royal Towers open and operating, and its employees paid, during the height of the COVID pandemic during the Chapter 11 case.

The Debtor filed for Chapter 11 relief in good faith, and it has performed as an exemplary Chapter 11 debtor in possession, in compliance with all applicable rules and orders of this Court.  No cause exists to dismiss this case, and certainly not so now at the behest of Commonwealth, which is the root cause and reason for this case to have been filed in the first place. The case is rapidly narrowing in focus to only Commonwealth-related issues, and will be fully resolved upon resolution of the Alabama State Court Action and of the affirmative claims and defenses that this Court expressly reserved for decision in this Court when that state court action concludes.  In short, Commonwealth should not be allowed to use its Motion to Dismiss to escape this Court's jurisdiction, this Court's prior orders and ultimately this Court's consideration of the Debtor's claims against it.

## IV.   CONCLUSION

Commonwealth could have moved to dismiss this Chapter 11 case in the early days when it was filed, but it chose not to do so. Instead, Commonwealth chose to oppose the Debtor at every step of the way in this case as enumerated in detail above. It was not until Commonwealth lost its motion to dismiss the Debtor's counterclaims against it in the Alabama State Court Action that Commonwealth filed the instant Motion to Dismiss as a matter of spite requiring more time and more expense to the Debtor and for some ill-disguised litigation advantage. Contrary to what Commonwealth asserts, it is Commonwealth–not the Debtor–seeking an unfair litigation advantage at this time by trying to dismiss this Chapter 11 case, and thereby undo all that has happened in this case over the past 27 months.  This Court should not accede to such a request, especially so in light of the facts of this case.

This Debtor should not be deprived of an opportunity to resolve this case as appropriate, through a plan or otherwise, to deal with the remaining claims in this case, and to do exactly what this Court ordered to be done, on the request of Commonwealth, namely, go to Alabama state court to resolve the pending claims there, and then return to this Court to resolve the affirmative claims and defenses against Commonwealth that this Court expressly reserved to itself.

Based on all of the foregoing, the Debtor respectfully requests that the Court deny Commonwealth's Motion to Dismiss this Chapter 11 case.

Dated:  April 22, 2022                    SULLIVAN HILL REZ & ENGEL
                                          A Professional Law Corporation

                                          /s/James P. Hill
                                          James P. Hill
                                          Sullivan Hill Rez & Engel, APLC
                                          Counsel for Debtor and Debtor in
                                          Possession, Vestavia Hills, Ltd.,
                                          dba Mount Royal Towers

#5139362v5                                24

EXHIBIT TABLE

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| 1 | Transcript of hearing conducted January 20, 2022 | 26–38 |

**EXHIBIT "1"**

Exhibit 1 - Page 26

1        UNITED STATES BANKRUPTCY COURT

2        SOUTHERN DISTRICT OF CALIFORNIA

3      JUDGE LOUISE DECARL ADLER, PRESIDING

4

5

6   IN THE MATTER OF:                    )
                                         )
7                                        )
                                         )
8                                        )
    VESTAVIA HILLS, LTD.                 )   CASE NO. 20-00018-LA
9                                        )
    _____)

10

11

12

13        CHAPTER 11 PETITION 1)SETTING STATUS CONFERENCE;
           2) SETTING COMPLIANCE DEADLINES; AND 3) SETTING
14         SANCTIONS, IF APPROPRIATE, INCLUDING DISMISSAL,
        CONVERSION OR APPOINTMENT OF A CHAPTER 11 TRUSTEE
15          OR EXAMINER BECAUSE OF NONCOMPLIANCE WITH
          ABOVE-REFERENCE REQUIREMENTS (FR 11/18/21)

16

17

18

19      REPORTER'S TRANSCRIPT OF PROCEEDINGS

20           SAN DIEGO, CALIFORNIA

21         THURSDAY, JANUARY 20, 2022

22

23
    U.S. BANKRUPTCY COURT              BY PATRICIA A. CALLIHAN
24  DEPARTMENT NO. 2                   CSR 13375
    325 W. F STREET
25  SAN DIEGO, CA  92101

```
1                        APPEARANCES

2    FOR THE DEBTOR:

3    SULLIVAN HILL
     BY JAMES P. HILL
4    600 B STREET, 17TH FLOOR
     SAN DIEGO, CALIFORNIA  92101
5

6    FOR THE UNITED STATES TRUSTEE:

7    OFFICE OF THE UNITED STATES TRUSTEE
     BY HAEJI HONG
8    880 FRONT STREET, SUITE 3230
     SAN DIEGO, CALIFORNIA  92101
9

10   FOR GUARANTORS AND LIMITED PARTNERS:

11   PROCOPIO CORY HARGREAVES & SAVITCH
     BY WILLIAM A. SMELKO
12   525 B STREET, SUITE 2200
     SAN DIEGO, CALIFORNIA  92101
13

14   FOR COMMONWEALTH ASSISTED LIVING:

15   BUCHALTER
     BY JULIAN GURULE
16   1000 WILSHIRE BOULEVARD, SUITE 1500
     LOS ANGELES, CALIFORNIA  90017
17

18

19

20

21

22

23

24

25
```

UNITED STATES BANKRUPTCY COURT

Exhibit 1 - Page 28

3

```
 1                            -oOo-

 2              THE CLERK:  IN THE MATTER OF VESTAVIA HILLS, LTD.

 3   THIS IS A CONTINUED HEARING ON THE CHAPTER 11 STATUS

 4   CONFERENCE.  MAY I HAVE THE APPEARANCE FOR THE DEBTOR.

 5              MR. HILL:  HELLO, YOUR HONOR.

 6              JIM HILL FOR VESTAVIA HILLS.

 7              THE CLERK:  MAY I HAVE THE APPEARANCE FOR THE

 8   U.S. TRUSTEE'S OFFICE.

 9              MS. HONG:  HAEJI HONG APPEARING ON BEHALF OF THE

10   UNITED STATES TRUSTEE.

11              THE CLERK:  AND MAY I HAVE THE APPEARANCE BY

12   MR. SMELKO.

13              MR. SMELKO:  GOOD MORNING, YOUR HONOR AND KAREN.

14   HAPPY NEW YEAR.

15              BILL SMELKO APPEARING ON BEHALF OF THE LIMITED

16   PARTNERS, DEBT FINANCERS AND GUARANTORS.

17              THE CLERK:  AND MAY I HAVE THE APPEARANCE OF

18   MR. GURULE.

19              MR. GURULE:  GOOD AFTERNOON, YOUR HONOR.

20              JULIAN GURULE OF BUCHALTER FOR COMMONWEALTH.  AND,

21   YOUR HONOR, MY CO-COUNSEL BRENT HITSON OF THE BURR & FORMAN

22   FIRM IN BIRMINGHAM IS ALSO ON.  AND WE PLAN, YOUR HONOR, JUST

23   TO MONITOR TODAY.  THANK YOU.

24              THE COURT:  ANYONE ELSE?  APPARENTLY NOT.  OKAY.

25              SO AS I UNDERSTAND WHERE WE ARE ON THIS IS THAT
```

UNITED STATES BANKRUPTCY COURT

Exhibit 1 - Page 29

```
 1   WE'VE GOT THE -- THE REQUEST FOR 120-DAY CONTINUANCE.  AND AS
 2   I INDICATED IN THE TENTATIVE, THAT'S FINE WITH ME; BUT GIVEN
 3   THE LATENESS OF THE REQUEST TO PUT THIS OVER FOR FOUR MONTHS,
 4   I WOULD BE WILLING TO LISTEN TO ANYBODY ELSE WHO DOESN'T
 5   REALLY LIKE THAT IDEA, AND UNDERSTAND WHAT THEIR REASONS MAY
 6   BE.
 7            MR. HILL:  YOUR HONOR, IF I MAY -- RIGHT ON TOP OF
 8   HAEJI.
 9            HAEJI, COULD I START?
10            MS. HONG:  YES.
11            MR. HILL:  THANK YOU.
12            YOUR HONOR, FIRST I JUST WANT TO CLARIFY FOR YOU
13   AND THE RECORD.  THE DEBTOR'S STATUS REPORT WAS TIMELY FILED
14   ON JANUARY 13.  YOUR TENTATIVE INDICATED YOU DIDN'T SEE IT
15   UNTIL JANUARY 16.  IT'S ECF --
16            THE COURT:  THAT'S WHAT IT'S DOCKETED AS.
17            MR. HILL:  NO, NO.  I HAVE THE FILE-STAMPED COPY
18   RIGHT IN FRONT OF ME.  IT'S DOCKETED AS JANUARY 16,
19   AND -- ANYWAY.
20            BUT I ALSO WAS NOT TRYING TO TALK YOUR HONOR OUT OF
21   HOLDING TODAY'S HEARING, BECAUSE WE HAVEN'T TALKED IN A WHILE
22   AND A LOT HAS HAPPENED AND, YOU KNOW, WE --
23            THE COURT:  I DID READ YOUR STATUS REPORT.  SO IF
24   THERE'S ANYTHING MORE THAT HAS HAPPENED -- ANYTHING MORE THAN
25   WHAT IS REPORTED IN THE STATUS REPORT -- I'LL HEAR THAT, BUT
```

1    I DON'T WANT TO HAVE A REHASH OF THE STATUS REPORT.

2           MR. HILL:  THANK YOU, YOUR HONOR.  THERE'S A FEW

3    MORE THINGS GOING ON AND YOU'RE GOING TO SEE THEM COME UP IN

4    THE VERY NEAR FUTURE.  WE ARE FOCUSSING NOW ON ADMIN AND

5    PRIORITY CLAIMS.  YOU DID JUST ENTER AN ORDER AUTHORIZING A

6    SUPPLEMENTAL ADMINISTRATIVE BAR DATE, AND THAT'S BEING

7    SERVED.  I THINK IT'S GOING OUT TODAY, OR TOMORROW AT THE

8    LATEST; THAT'S THE DEADLINE FOR US TO SEND IT OUT.  AND WE

9    WILL BE FOCUSSING ON THOSE BECAUSE, AS YOU ARE WELL AWARE,

10   YOU KNOW, WE'VE GOT A CLEAN HOUSE NOW.  THE SALE HAS CLOSED.

11   AND WE WOULD BE IMPLEMENTING THE SBA SETTLEMENT THAT YOU

12   APPROVED, AND YOU'LL BE SEEING AN ORDER ON THAT IF NOT TODAY,

13   CERTAINLY TOMORROW.

14          WE DID JUST FILE TWO REQUESTS FOR 2004 EXAMS ON

15   JEFFERSON COUNTY.  WE KIND OF ADDRESSED IT IN THE REPORT, BUT

16   WE JUST FILED THE REQUEST FOR 2004 EXAMS, SO YOU'LL SEE

17   THOSE.  HOPEFULLY WE'LL GET MATTERS WORKED OUT WITH THE

18   COUNTY, BUT, YOU KNOW, IT MAY REQUIRE A 505

19   PROCEEDING -- SECTION 505 PROCEEDING, WHICH YOU'VE SEEN

20   BEFORE IN THIS CASE.

21          AND THEN FINALLY, AS MR. GURULE CAN CONFIRM,

22   COMMONWEALTH LITIGATION IS GOING ON IN ALABAMA AND WE ARE

23   GOING FORWARD WITH THAT.  AND IF WE HAVE TO, WE'LL BE BACK

24   BEFORE YOUR HONOR AT THE CONCLUSION OF THAT, CONSISTENT WITH

25   YOUR PRIOR ORDERS, TO ADDRESS AFFIRMATIVE CLAIMS OF THE

```
 1   DEBTOR AND/OR OBJECTIONS TO THE CLAIMS OF THE DEBTOR TO

 2   COMMONWEALTH IF THEY SURVIVE THE ALABAMA LITIGATION.

 3            I DON'T REALLY HAVE ANYTHING ELSE, BUT I DID JUST

 4   WANT TO ALERT YOU WHERE OUR FOCUS IS TURNING IN THE INTERIM

 5   WHILE THAT ALABAMA LITIGATION PROCEEDS.

 6            THE COURT:  DO YOU HAVE AN IDEA OF WHAT -- THE

 7   TIMETABLE OF THE ALABAMA LITIGATION?

 8            MR. HILL:  YOUR HONOR, AS WE REPORTED IN THE STATUS

 9   REPORT AND WHAT WAS RELAYED TO US BY OUR ALABAMA COUNSEL, IS

10   THE DISCOVERY CUTOFF IN THAT CASE IS END OF 2022,

11   DECEMBER 2022; AND THEREFORE TRIAL AND DISPOSITIVE MOTIONS

12   ARE NOT EXPECTED UNTIL AFTER THAT DISCOVERY CUTOFF.

13            THE COURT:  OKAY.  MR. SMELKO, ANYTHING FROM YOU ON

14   ANY OF THE CONCERNS OR ANY REACTION TO THE REQUEST FOR THE

15   CONTINUANCE?

16            MR. SMELKO:  NO, YOUR HONOR.  I'D LIKE TO THANK YOU

17   FOR YOUR PATIENCE.  THIS HAS BEEN -- YOU KNOW, GOING BACK TO

18   MY EARLIEST DAYS, THIS HAS BEEN ONE OF THE MORE UNUSUAL CASES

19   THAT I'VE BEEN INVOLVED IN, JUST BECAUSE OF THE COVID THING,

20   AND YOUR PATIENCE HAS DONE WONDERS FOR THE HUMAN BEINGS IN

21   THIS CASE.  THE --

22            THE COURT:  PATIENCE HAS DONE REALLY WELL WITH THE

23   DOGS TOO.  THEY'RE MUCH CALMER.

24            MR. SMELKO:  YOU'RE ABLE TO STAY AT HOME WITH THEM

25   AT LEAST.  THERE REALLY WERE LIVES AT STAKE IN THIS ONE, AND
```

1    WHAT YOU'VE DONE HAS BEEN EXEMPLARY.

2              THE COURT:  THANK YOU.

3              MR. SMELKO:  THE 120 DAYS ENABLES US TO GET THINGS

4    WORKED OUT.  WE'LL SEE WHAT HAPPENS WITH COMMONWEALTH AND

5    HOPEFULLY GET DONE SUCCESSFULLY FOR EVERYBODY AND ALL PARTIES

6    IN INTEREST.

7              THE COURT:  MR. GURULE.

8              MR. HILL:  YOUR HONOR, I FORGOT ONE THING.  I

9    SPOKE, PRIOR TO TODAY'S STATUS HEARING, WITH BARRETT MARUM,

10   COUNSEL FOR WELLS FARGO, AND HE WANTED ME TO PASS ON THAT HE

11   WOULD NOT BE APPEARING TODAY; AND, TWO, HE HAS NO OBJECTION

12   TO CONTINUING THE STATUS CONFERENCE OUT ANOTHER 120 DAYS OR

13   SO DEPENDING ON YOUR CALENDAR.

14             THE COURT:  OKAY.  AND, MR. GURULE, SINCE YOU'RE

15   ONLY MONITORING, UNLESS THERE IS SOMETHING YOU ARE REALLY

16   DEEPLY OFFENDED BY, I WON'T REALLY ASK YOU FOR ADDITIONAL

17   COMMENT.

18             MS. HONG, ANYTHING FROM THE U.S. TRUSTEE'S OFFICE?

19             MS. HONG:  THE UNITED STATES TRUSTEE ISN'T OPPOSED

20   TO THE CONTINUANCE OF THE STATUS CONFERENCE; BUT THIS CASE

21   WAS FILED, OBVIOUSLY, BACK IN JANUARY OF 2020, AND WE

22   WONDERED WHETHER OR NOT A DEADLINE SHOULD BE SET, PERHAPS, IN

23   THE NEXT 60 DAYS FOR FILING A NEW DISCLOSURE STATEMENT AND A

24   PLAN, JUST SO THAT THE DEBTOR CAN -- I UNDERSTAND THE

25   DEBTOR'S BEEN DOING A LOT TO MOVE THE CASE ALONG, BUT THAT

1 | MAY HELP TO EXPEDITE THE PROGRESS TOWARDS THE PLAN

2 | CONFIRMATION.

3 |      THE COURT:  MR. HILL, IS THE DEBTOR GOING TO BE

4 | SERIOUSLY PURSUING PLAN CONFIRMATION, OR ARE THEY JUST USING

5 | THIS AS A HOLDING PATTERN UNTIL SOME OF THESE OTHER ENDS GET

6 | TIED DOWN?

7 |      MR. HILL:  YOUR HONOR -- AND WELCOME TO THE CASE,

8 | MS. HONG.  IN LIGHT OF YOUR PRIOR RULINGS, INCLUDING

9 | RECOGNIZING WHAT APPEARS TO BE A TREND IN OUR COUNTRY RIGHT

10 | NOW AGAINST THIRD-PARTY STAYS AND INJUNCTIONS -- AT LEAST AS

11 | YOU FELT IN OUR LAST PLAN -- AND GIVEN THE ORDERS TO PROCEED

12 | WITH TRIAL WITH COMMONWEALTH IN ALABAMA, WE DO NOT BELIEVE IT

13 | IS APPROPRIATE TO GO FORWARD WITH A PLAN GIVEN THE UNCERTAIN

14 | STATUS OF THE COMMONWEALTH CLAIMS.

15 |      WE HAD HOPED TO BE ABLE TO RESOLVE THOSE CLAIMS IN

16 | THIS COURT IN A MORE EXPEDITED FASHION.  I THINK YOUR HONOR

17 | PROBABLY WAS OF THE IMPRESSION THAT CLAIMS WOULD BE RESOLVED

18 | QUICKLY IN ALABAMA.  I THINK THEY'RE BEING RESOLVED AS

19 | QUICKLY AS THEY CAN BE IN ALABAMA.  BUT, NO, YOUR HONOR, AT

20 | THE PRESENT TIME, CERTAINLY NOT WITHIN THE NEXT 120 DAYS, WE

21 | DO NOT INTEND TO AMEND THE PLAN AND DON'T THINK IT'S

22 | APPROPRIATE IN LIGHT OF YOUR RULINGS IN THIS CASE YET.  THAT

23 | SAID, MOST OF THE CLAIMS HAVE BEEN ADDRESSED.

24 |      AND LIKE I SAID, WE'RE GOING TO BE ADDRESSING THE

25 | ADMIN CLAIMS, GOING THROUGH THOSE, NOW THAT YOU'VE SET

```
 1   ADMINISTRATIVE CLAIMS BAR DATE AGAIN, AND WE WILL TRY TO GET
 2   THOSE RESOLVED.  IT MAY WELL BE, YOUR HONOR, THAT WE WILL
 3   ADDRESS THOSE OUTSIDE OF A PLAN, LEAVING VERY LITTLE OTHER
 4   THAN COMMONWEALTH TO BE RESOLVED.  AND I HAVE NO PROBLEM WITH
 5   SPEAKING WITH MS. HONG AFTER THIS CALL TO GIVE HER A BROADER
 6   VIEW OF THIS CASE.  BUT A LOT HAS HAPPENED.  A LOT OF CLAIMS
 7   HAVE BEEN SATISFIED.  AND THIS CASE IS NARROWING DOWN VERY
 8   QUICKLY, YOUR HONOR, TO WHAT I'LL CALL A TWO-PARTY DISPUTE IF
 9   YOU -- REALLY THREE PARTIES, WITH THE LIMITED PARTNER GROUP,
10   THE DEBTOR AND COMMONWEALTH.  YOU KNOW, WHEN IT GETS DOWN TO
11   THAT LEVEL, IT WILL BE PERHAPS SIMPLER TO RESOLVE.
12          THE COURT:  AND PERHAPS SIMPLER TO RESOLVE WITHOUT
13   A PLAN.
14          MR. HILL:  WITH OR WITHOUT A PLAN, YOUR HONOR.
15          MR. SMELKO:  THE OTHER THING THAT THE 120 DAYS GETS
16   US IS PAST COMPLETION, REALLY, OF THE WELLS FARGO SETTLEMENT
17   AGREEMENT PAYMENTS.  WE ARE DANGEROUSLY CLOSE AT THE END OF
18   120 DAYS TO MAKING THAT COMPLETELY PAID OFF, WHICH DOES THEN
19   NARROW THINGS DOWN TO THE LAST PERSON STANDING, WHICH WOULD
20   BE COMMONWEALTH.
21          THE COURT:  OKAY.  ALL RIGHT.  FRANKLY, MS. HONG, I
22   HAD NOT FOCUSED ON THE FACT THAT THEY HADN'T HAD A PLAN ON
23   FILE, BECAUSE THEY DID, AND OTHER THINGS HAPPENED AND OTHER
24   THINGS HAPPENED AND OTHER THINGS HAPPENED.  SO HAVING A PLAN
25   IN THIS CASE IS LIKE THE CHILD'S GAME OF MAGIC SLATE.  WE GET
```

THURSDAY, JANUARY 20, 2022

```
 1   A PLAN, AND THEN EVERYTHING GOES SIDEWAYS, AND WE HAVE TO

 2   HAVE ANOTHER PLAN.  SO AT THIS POINT, IF THE DEBTOR THINKS

 3   THAT SOME ADDITIONAL TIME TO RESOLVE CLAIMS WOULD BE HELPFUL

 4   AND THEN JUST LEAVE THE RESOLUTION OF THE COMMONWEALTH CLAIMS

 5   AS THE FINAL MATTER TO RESOLVE IN THIS CASE, I'M TEMPTED TO

 6   LET THEM TRY, BECAUSE IT'S PROBABLY A LOT EASIER TO POSE A

 7   PLAN AROUND ONE CREDITOR THAN TO STILL HAVE OTHERS WHOSE

 8   CLAIMS ARE IN PLAY.  SO I'M GOING TO GO FORWARD WITH THE

 9   120-DAY CONTINUANCE THAT I'VE SUGGESTED TO COUNSEL THAT I'M

10   WILLING TO DO.

11        AND I THINK -- LET'S SEE.  DID I GIVE YOU A DATE?

12   NO, I DIDN'T.  I'M GOING TO GIVE YOU THE DATE OF MAY 12.  THE

13   WEEK AFTER IS NOT GOING TO WORK BECAUSE I WILL PROBABLY BE

14   OUT OF THE COUNTRY.  MAY 12 AT 2:00.

15        MR. HILL:  WIDE OPEN FOR ME.  LOOKS GREAT.  THANK

16   YOU.

17        THE COURT:  GOOD.  ALL RIGHT.  THAT'S WHAT WE'LL

18   SET IT AS, THEN.  THANK YOU VERY MUCH.  UNLESS THERE'S

19   ANYTHING FURTHER --

20        MR. HILL:  I TAKE IT, YOUR HONOR, YOU PROBABLY WANT

21   A STATUS REPORT ONE WEEK EARLIER?

22        THE COURT:  YES, PLEASE.

23        MR. HILL:  WE WILL DO SO.

24        THE COURT:  OKAY.  AND JUST ADDRESSING THAT WHICH

25   OCCURRED SINCE THE LAST TIME WE HAD YOU ALL HERE.
```

Exhibit 1 - Page 36

```
 1              MR. HILL:  WE'VE GOTTEN OUR REPORTS MUCH MORE
 2    STREAMLINED, YOUR HONOR.
 3              THE COURT:  YES, I'VE NOTICED.  I APPRECIATE THAT.
 4    I APPRECIATE THAT.
 5              MR. HILL:  THANK YOU, YOUR HONOR.
 6              THE COURT:  ANYTHING FURTHER FROM ANYBODY ON THIS
 7    MATTER?
 8              MR. SMELKO:  THANK YOU, YOUR HONOR.  STAY HEALTHY.
 9              THE COURT:  YES.  I'M TRYING.  THANK YOU.
10                             -o0o-
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

UNITED STATES BANKRUPTCY COURT

**Exhibit 1 - Page 37**

```
 1  STATE OF CALIFORNIA

 2

 3  COUNTY OF SAN DIEGO

 4

 5          I, PATRICIA A. CALLIHAN, COURT REPORTER, DO HEREBY

 6  CERTIFY:

 7          THAT I REPORTED IN SHORTHAND THE PROCEEDINGS HELD

 8  IN THE FOREGOING CAUSE ON THE 20TH DAY OF JANUARY, 2022; THAT

 9  MY NOTES WERE LATER TRANSCRIBED INTO TYPEWRITING UNDER MY

10  DIRECTION; AND THAT THE FOREGOING TRANSCRIPT CONTAINS A

11  CORRECT STATEMENT OF THE PROCEEDINGS.

12

13          DATED THIS 19TH DAY OF APRIL, 2022.

14

15                          /s/ Patricia A. Callihan
                            Patricia A. Callihan, CSR No. 13375
16

17

18

19

20

21

22

23

24

25
```

UNITED STATES BANKRUPTCY COURT

Exhibit 1 - Page 38